## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

MAURINE MOLAK and MATTHEW MOLAK,

    *Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION and THE UNITED STATES OF AMERICA,

    *Respondents*.

No. _____

## PETITION FOR REVIEW

Pursuant to Section 402(a) of the Communications Act of 1934, as amended, 47 U.S.C. § 402(a), and Section 2342(1) of Title 28 of the United States Code, 28 U.S.C. § 2342(1), and in accordance with Federal Rule of Appellate Procedure 15, Maurine Molak and Matthew Molak ("Petitioners") hereby petition for review of the declaratory ruling issued by the Federal Communications Commission ("FCC") titled *Modernizing the E-Rate Program for Schools and Libraries*, FCC 23-84, WC Docket No. 13-184 ("Declaratory Ruling"). The FCC released the Declaratory Ruling on October 25, 2023. This petition for review is timely because it is filed within 60 days of that date. *See* 28 U.S.C. § 2344; *see also* 47 C.F.R. § 1.4(b)(2). Venue is proper because Petitioners reside in this circuit. *See* 28 U.S.C. § 2343.

The Declaratory Ruling authorizes funding for the provision of Wi-Fi service and equipment on school buses under the FCC's E-Rate Program. Petitioners are aggrieved by the Declaratory Ruling because it will increase the outlays of the E-Rate Program and thereby directly increase the amount of the Federal Universal Service Charge that Petitioners pay each month as a line-item on their phone bill to fund the cost of the E-Rate Program. Petitioners also have a special interest in this matter as co-founders of David's Legacy Foundation, a non-profit dedicated to the memory of their late son and committed to ending cyberbullying through education, legislation, and legal action. The Declaratory Ruling undermines that crucial mission by enabling unsupervised social-media access by children and teenagers.

The Declaratory Ruling exceeds the FCC's statutory authority and is contrary to law. Petitioners request that this Court hold unlawful, vacate, enjoin, and set aside the Declaratory Ruling, and grant such other relief as it may deem appropriate.

A copy of the Declaratory Ruling is attached as Exhibit A.

Dated: December 19, 2023                    Respectfully submitted,

*/s/ Yaakov M. Roth*
Yaakov M. Roth
David K. Suska
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-7658
yroth@jonesday.com

*Counsel for Petitioners*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: December 19, 2023

Respectfully submitted,

*/s/ Yaakov M. Roth*
Yaakov M. Roth

*Counsel of Record for Petitioners*

## CERTIFICATE OF SERVICE

I certify that on December 19, 2023, the foregoing Petition for Review was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system and two copies were sent to the Clerk of Court by overnight United Parcel Service.  I further certify that there are no parties "admitted to participate in the agency proceedings" for purposes of Federal Rule of Appellate Procedure 15(c)(1) other than the respondents.

Dated: December 19, 2023          Respectfully submitted,

*/s/ Yaakov M. Roth*
Yaakov M. Roth

*Counsel of Record for Petitioners*

# EXHIBIT A

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | **)** | |
| | **)** | |
| Modernizing the E-Rate Program for Schools and | **)** | WC Docket No. 13-184 |
| Libraries | **)** | |

**DECLARATORY RULING**

Adopted:  October 19, 2023                         Released:  October 25, 2023

By the Commission: Chairwoman Rosenworcel and Commissioners Starks and Gomez issuing separate statements; Commissioners Carr and Simington dissenting and issuing separate statements.

## I.    INTRODUCTION

1.        In this Declaratory Ruling, we take an important step to address the educational needs of the millions of students caught in the "Homework Gap" by clarifying that the use of Wi-Fi, or other similar technologies that act as an access point, on school buses is an educational purpose as defined by E-Rate program rules and, therefore, the provision of such service is eligible for E-Rate funding.  Without Internet connectivity at home, many students are unable to fully engage in their education and unable to complete homework or other assignments before or after school hours.[1]

2.        Today, we seek to narrow this gap by clarifying that the use of Wi-Fi, or other similar access point technologies, on school buses is an educational purpose, and the provision of such service, including the equipment needed to provide such service, is eligible for E-Rate funding, consistent with the Commission's past determinations regarding other eligible off-campus uses of E-Rate-supported services.  As such, we direct the Wireline Competition Bureau (Bureau) to fund the provision of these services, as well as any E-Rate-eligible equipment needed to enable these services, as part of the funding year 2024 eligible services list proceeding.[2]  In doing so, we seek to enhance the benefits and the reach of the E-Rate program to ensure students across the country can more fully engage in their learning.

## II.    BACKGROUND

3.        *E-Rate Program*.  The Commission has a long history of providing support for the provision of broadband services to schools and libraries through the E-Rate program, formally known as the schools and libraries universal service support mechanism.  The E-Rate program was authorized by Congress as part of the Telecommunications Act of 1996, and created by the Commission in 1997 to, among other things, enhance, to the extent technically feasible and economically reasonable, access to advanced telecommunications and information services for all public and nonprofit elementary and

---

[1] Common Sense Media & Boston Consulting Group, Closing the Digital Divide Benefits Everyone, Not Just the Disconnected at 5 (2022), https://www.commonsensemedia.org/sites/default/files/research/report/2022-cs-bcg-closing-digital-divide_final-release-3-for-web.pdf (Common Sense 2022 Report) (highlighting that there are at least 16 million students nationwide that live in homes without a broadband connection).

[2] The Bureau annually updates the eligible services list, which specifies the services and products that are eligible for E-Rate funding each funding year.  *See* 47 CFR § 54.502(a) ("All supported services are listed in the Eligible Services List as updated annually in accordance with paragraph (d) of this section."); *see also* 47 CFR § 54.502(e) (detailing the procedures for seeking comment on the draft eligible services list).  We further note that the Administrator (i.e., the Universal Service Administrative Company (USAC)) is required to submit a draft proposed eligible services list to the Commission by March 30 of each year.  *Id.*

secondary school classrooms and libraries.[3]  The E-Rate program allows eligible schools, libraries, and consortia (comprised of eligible schools and libraries) to request universal service support for what are called "category one" services (which provide connectivity, including broadband connectivity, *to* eligible school and library locations) and "category two" services (which provide connectivity *within* eligible school and library locations).[4]

4.      Section 254(h)(1)(B) of the Communications Act requires telecommunications carriers to provide services to schools and libraries for "educational purposes."[5]  As a result, our E-Rate rules require schools and libraries to use E-Rate-supported services "primarily for educational purposes."[6]  In the case of schools, the Commission has defined "educational purposes" as, "activities that are integral, immediate, and proximate to the education of students."[7]  Recognizing that the technology needs of E-Rate program participants are complex and unique to each participant, the Commission established a presumption that activities that occur in a school or on a school campus serve an educational purpose, and therefore, services used there are eligible for E-Rate funding.[8]  The E-Rate program does not provide support for most off-campus services, and E-Rate applicants are, therefore, generally required to cost-allocate out of their funding requests any portion of eligible equipment or services that are used off-campus.[9]

5.      In some instances, however, the Commission has allowed E-Rate support for off-campus services, finding that the off-campus use of such services is "integral, immediate, and proximate to the education of students or the provision of library services to library patrons, and thus, would be considered to be an educational purpose."[10]  For example, in 2003, the Commission determined that the following off-site activities are permissible:  "a school bus driver's use of wireless telecommunications services while delivering children to and from school, a library staff's person's use of wireless

---

[3] *See* 47 U.S.C. § 254(h)(2)(A).

[4] 47 CFR §§ 54.501, 54.502.  Category one services generally include data transmission and Internet access services, while category two services include internal connections (e.g., Wi-Fi, routers, switches), managed internal broadband services (e.g., managed Wi-Fi), and basic maintenance of internal connections.  47 CFR § 54.502(a)(1)-(2).

[5] 47 U.S.C. § 254(h)(1)(B).

[6] *Schools and Libraries Universal Service Support Mechanism*, WC Docket No. 02-6, Sixth Report and Order, 25 FCC Rcd 18762, 18774, para. 22 (2010) (*Schools and Libraries Sixth Report and Order*) (amending E-Rate program rules to require that services be used *primarily* for educational purposes and explaining that "[t]o primarily use services supported by E-rate, E-rate recipients must ensure that students always get first priority in use of the schools' resources").  In amending the rules, the Commission permitted schools to allow the general public to access E-Rate-funded services when classes are not in session subject to certain conditions:  (1) they may not request more funding than is necessary to serve their current student population; (2) any community use of E-Rate-funded services at a school facility must be limited to non-operating hours of the school and to community members who access Internet while on the school's campus; and (3) they may not charge for the use of these E-Rate-funded services.  *Id.* at 18775-76, paras. 24-26.

[7] *Id.* (clarifying the meaning of educational purposes); 47 CFR § 54.500 (defining "educational purposes").

[8] *Schools and Libraries Universal Service Support Mechanism*, CC Docket No. 02-6, Second Report and Order and Further Notice of Proposed Rulemaking, 18 FCC Rcd 9202, 9208, para. 17 (2003) (*Schools and Libraries Second Report and Order*).

[9] *See Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No. 13-184, Order, DA 22-1313, 2022 WL 17886489, at *11 (WCB Dec. 14, 2022) (*FY 2023 Eligible Services List Order*) (adopting the eligible services list for funding year 2023, which requires that off-campus use be cost-allocated from a funding request, among other things); 47 CFR § 54.504(e) (detailing the requirement to cost-allocate ineligible services from E-Rate funding requests).

[10] *See Schools and Libraries Second Report and Order*, 18 FCC Rcd at 9208-9209, para. 19.

telecommunications services on a library's mobile library unit van, and the use by teachers or other school staff of wireless telecommunications services while accompanying students on a field trip or sporting event."[11]  Similarly, recognizing the unique challenges of certain residential student populations, the Commission in 2010 began allowing E-Rate support for eligible services serving the residential areas of schools that serve unique populations— including schools on Tribal lands and schools designed to serve students with medical needs, among others—because such services are used primarily, if not exclusively, for educational purposes.[12]  Paramount to the Commission's determination was its finding that such residential schools serve students whose educational needs may not otherwise be met without attending these schools and that limiting support to these types of residential schools, rather than expanding support to any school with a dormitory or residential facility on its grounds, minimized the potential impact on limited E-Rate funding, while targeting those students with the most unique needs.[13]

6.    *Requests for School Bus Wi-Fi Eligibility.*  Over the course of the program's existence, the Commission has received requests from E-Rate stakeholders asking that the services and equipment that enable access to Wi-Fi on school buses be made eligible for E-Rate funding to enhance broadband access to students who may not have reliable access outside of school, and these requests have intensified over the last few years.  Stakeholders have requested that these services and equipment be eligible for funding in part because of the COVID-19 pandemic,[14] but also because many students who do not have broadband connectivity at home could use the school bus Wi-Fi to complete homework and other assignments while traveling to and from school.[15]  In February 2021, the Bureau issued a Public Notice seeking comment on several petitions for waiver requesting emergency relief through the E-Rate program for the purpose of enabling remote learning during the pandemic,[16] including through the provision of Wi-Fi on school buses.[17]  In response, several commenters urged the Commission to provide E-Rate support for services and equipment enabling Wi-Fi on school buses on a permanent basis,[18] noting the impact that

---

[11] *See id.* at 9208-9209, n.28.  In 2010, the Commission also launched a pilot program—E-Rate Deployed Ubiquitously (EDU2011)—to investigate the merits and challenges of wireless off-premises connectivity services for mobile learning devices.  *Schools and Libraries Sixth Report and Order*, 25 FCC Rcd at 18783-87, paras. 41-50.  As part of this pilot program, the Commission authorized up to $10 million for funding year 2011 to support a small number of innovative, interactive off-premises wireless connectivity projects for schools and libraries.  *Id.* at 18785-86, para. 46.

[12] *See Schools and Libraries Sixth Report and Order*, 25 FCC Rcd at 18779, paras. 31-32.

[13] *Id.*

[14] *See, e.g., infra* notes 17, 19, and 21.

[15] *See, e.g., infra* note 18.

[16] *Wireline Competition Bureau Seeks Comment on Petitions for Emergency Relief to Allow the Use of E-Rate Funds to Support Remote Learning During the COVID-19 Pandemic*, WC Docket No. 21-31, Public Notice, 36 FCC Rcd 1304 (WCB 2021) (*Remote Learning Public Notice*).

[17] *See* Petition for Expedited Declaratory Ruling and Waivers filed by the Schools, Health & Libraries Broadband Coalition, et al., WC Docket No. 13-184, at 8-10 (filed Jan. 26, 2021), https://www.fcc.gov/ecfs/filing/101260036427898 (SHLB Petition) (arguing that connectivity solutions to expand broadband accessibility for remote learning during the pandemic, including school bus Wi-Fi in targeted locations, are for educational purposes); Petition for Emergency Waiver filed by the Navajo Nation, CC Docket No. 02-6 (filed Apr. 30, 2020), https://www.fcc.gov/ecfs/filing/10501013173531 (Navajo Nation Petition) (seeking to equip school buses with Wi-Fi to make library service available remotely).  Although the *Remote Learning Public Notice* sought comment on these petitions, the Bureau did not explicitly seek comment on the Wi-Fi on school buses propositions within the public notice.

[18] *See, e.g.,* E-rate Management Professionals Association Comments, WC Docket No. 21-31, at 14 (rec. Feb. 16, 2021) (E-mpa Remote Learning Comments) (urging the Commission to make Internet service on school buses permanently eligible for E-Rate support because it would allow students to use the significant time spent on buses for learning and studies show it is "affordable within the existing E-rate funding structure"); Aurora Institute

(continued....)

outfitting buses to provide connectivity has had on their communities.[19]  More recently, commenters in response to the Bureau's *FY 2022 Eligible Services List Public Notice* reiterated the request to find the provision of Wi-Fi on school buses eligible,[20] with numerous commenters arguing that the use of Wi-Fi on school buses serves an educational purpose and should therefore be eligible for E-Rate support.[21]

7.     *Emergency Connectivity Fund Program*.  As part of the American Rescue Plan Act of 2021, Congress appropriated $7.171 billion to the Commission to promulgate rules providing for the distribution of funding from the Emergency Connectivity Fund to eligible schools and libraries for the

(Continued from previous page) ───────────────

Comments, WC Docket No. 21-31, at 5 (rec. Feb. 16, 2021) (recommending the Commission add Wi-Fi services on school buses to the eligible services list); New Mexico Public School Facilities Authority Comments, WC Docket No. 21-31, at 3, 5-6 (rec. Feb. 16, 2021) (New Mexico PSFA Remote Learning Comments) (requesting Wi-Fi on school buses to be eligible for E-Rate support because it "would allow students to make effective use of their time in transit and provides a greater benefit to those students that do not have access at home or work after school"); Illinois Office of Broadband Comments, WC Docket No. 21-31, at 7 (rec. Feb. 16, 2021) (noting that "broadband buses" can be a short-term or a long-term solution for situations where mobile hotspots or wireline network expansion fall short); West Virginia Department of Education Reply, WC Docket No. 21-31, at 2-3 (rec. Feb. 26, 2021) (WVDE Remote Learning Reply) (arguing that allowing students to have access during transportation to and from school and other student activities to work on assignments "has been a sensible way to meet the homework gap demands both during pandemic and prior" and explaining the burdensome process of cost-allocating 190 school buses providing Wi-Fi to the community).

[19] New Mexico PSFA Remote Learning Comments at 5 (describing how a New Mexico school district partnered with Google to deploy Wi-Fi on buses for "rolling study halls" to allow students to complete homework on long commutes home); New America's Open Technology Institute & Education Policy Program, Public Knowledge, Consumer Reports, the Benton Institute for Broadband & Society, and Access Humboldt Comments, WC Docket No. 21-31, at 20-21 (rec. Feb. 16, 2021) (stating that deploying Wi-Fi on buses has become a common strategy for school districts nationwide to expand connectivity for students who lack access at home); E-mpa Remote Learning Comments at 9-10 (explaining how one Georgia school system uses its own resources for "smartbuses" to reach students with limited or no Internet access); WVDE Remote Learning Reply at 3 (explaining how a West Virginia school district deployed school buses during a 2016 flood to ensure students impacted by the disaster were still able to complete assignments).

[20] *Wireline Competition Bureau Seeks Comment on Proposed Eligible Services List for the E-Rate Program*, WC Docket No. 13-184, Public Notice, DA 21-1062, 1 (WCB Aug. 27, 2021) (*FY 2022 Eligible Services List Public Notice*).  Commenters in response to the Bureau's *FY 2023 Eligible Service List Public Notice* have similarly urged the Commission to make Wi-Fi on school buses eligible for E-Rate support and have expressed support for the adoption of this Declaratory Ruling, which Chairwoman Rosenworcel initially circulated on May 11, 2022.  *See, e.g.*, SpaceX Comments, WC Docket No. 13-184, at 1-2 (rec. Sept. 21, 2022); *see also* Press Release, FCC, Chairwoman Rosenworcel Circulates Ruling Making Wi-Fi on School Buses Eligible for E-Rate Support (May 11, 2022); Letter from Indra Sehdev Chalk, T-Mobile USA, Inc. to Marlene H. Dortch, Secretary, FCC, WC Docket No. 13-184, at 2 (filed Sept. 15, 2023) (expressing support for the Learn Without Limits Initiative, including adoption of this Declaratory Ruling).

[21] *See, e.g.*, CoSN Comments, WC Docket No. 13-184, at 4 (rec. Sept. 27, 2021) (explaining that school buses can serve as a mobile educational facility and Wi-Fi services on school buses should be eligible); SHLB Comments, WC Docket No. 13-184, at 2 (rec. Sept. 27, 2021) (arguing that students' use of Wi-Fi services on school buses clearly serves an educational purpose and should be eligible under section 254); Microsoft Corporation Reply Comments, WC Docket No. 13-184, at 2 (rec. Oct. 12, 2021) (arguing that the provision of Wi-Fi services on school buses satisfies the program's educational purpose requirement and should be funded); Urban Education Network of Iowa Comments (requesting Wi-Fi on school buses to be eligible for E-Rate support); Rural School Advocates of Iowa Comments, WC Docket No. 13-184 (rec. Oct. 13, 2021) (same); E-rate Provider Services Reply Comments, WC Docket No. 13-184, at 2-3 (rec. Oct. 11, 2021) (same); Wisconsin Department of Public Instruction Reply Comments, WC Docket No. 13-184, at 1-2 (rec. Oct. 12, 2021) (WIDPI FY 2022 ESL Reply) (same); Information Technology Industry Council Reply Comments, WC Docket No. 13-184, at 2-4 (rec. Oct. 12, 2021) (same); Cradlepoint Reply Comments, WC Docket No. 13-184, at 2 (rec. Oct. 12, 2021) (requesting Wi-Fi on school buses and related equipment to be eligible for support).

purchase of eligible equipment and/or advanced telecommunications and information services for use by students, school staff, and library patrons at locations that include locations other than a school or library during the COVID-19 emergency period.[22]  For purposes of the Emergency Connectivity Fund, section 7402 of the American Rescue Plan Act defines the COVID-19 emergency period as beginning on the date the Secretary of Health and Human Services determined that a public health emergency exists as a result of COVID-19 pursuant to section 319 of the Public Health Service Act,[23] and ending on the June 30 that first occurs after the date that is one year after the Secretary of Health and Human Services determines that a public health emergency no longer exists.[24]  On May 11, 2023, the U.S. Department of Health and Human Services permitted the COVID-19 public health emergency to expire,[25] and therefore, Emergency Connectivity Fund program will sunset on June 30, 2024.[26]

8.      On May 10, 2021, the Commission adopted a Report and Order establishing the Emergency Connectivity Fund program to distribute the congressionally appropriated funding to eligible schools and libraries for the purchase of eligible equipment and/or services needed to support remote learning during the COVID-19 emergency period.[27]  Over the past two years, the Emergency Connectivity Fund program has provided funding for connecting students, school staff, and library patrons off-campus, which includes funding for the purchase of Wi-Fi hotspots and services for school buses and library bookmobiles.[28]  To date, the Commission has committed approximately $58.2 million in funding for the purchase of Wi-Fi hotspots and broadband services for school buses to provide off-campus broadband connectivity to students and school staff who currently lack sufficient broadband access.[29]

---

[22] American Rescue Plan Act, 2021, H.R. 1319, Pub. L. No. 117-2, 117th Cong., tit. VII, § 7402(a)(1)-(2) (2021) (enacted), available at https://www.congress.gov/bill/117th-congress/house-bill/1319/text (American Rescue Plan Act) (enrolled bill).

[23] *See* H.R. 1319, tit. VII, § 7402(d)(5)(A).  The Public Health Emergency concerning COVID-19 was originally declared on January 30, 2020 "as in existence since January 27, 2020," by the Secretary of HHS, pursuant to section 319 of the Public Health Service Act.  *See* 47 U.S.C. § 247d.

[24] *See* H.R. 1319, tit. VII, § 7402(d)(5)(B); *see also* 47 U.S.C. § 247d.

[25] *See* News Release, Department of Health and Human Services (HHS), HHS Secretary Xavier Becerra Statement on End of the COVID-19 Public Health Emergency (May 11, 2023), https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html; Department of Health and Human Services (HHS), COVID-19 Public Health Emergency (PHE), https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html (last visited June 22, 2023); *see also Wireline Competition Bureau and Office of the Managing Director Provide Guidance on Emergency Connectivity Fund Program Upon Termination of the Emergency Period*, WC Docket No. 21-93, Public Notice, DA 23-406, 2023 WL 3579198 (WCB May 12, 2023) (announcing June 30, 2024 as the sunset date for the Emergency Connectivity Fund program).

[26] *See* H.R. 1319, tit. VII, § 7402(d)(5)(B).

[27] *See generally Establishing the Emergency Connectivity Fund to Close the Homework Gap*; WC Docket No. 21-93, Report and Order, 36 FCC Rcd 8696 (2021) (*Emergency Connectivity Fund Report and Order*).

[28] *Id.* at 8727, para. 61 (allowing schools and libraries to use Emergency Connectivity Fund program support to purchase Wi-Fi hotspots for school buses and bookmobiles to provide off-campus broadband services to students, school staff, and library patrons who currently lack sufficient broadband access).

[29] *See* Universal Service Administrative Company, *Emergency Connectivity Fund FCC Form 471*, https://opendata.usac.org/Emergency-Connectivity-Fund/Emergency-Connectivity-Fund-FCC-Form-471/i5j4-3rvr (last visited Sept. 21, 2023) (reporting data on what equipment and services for school buses have been requested in the Emergency Connectivity Fund program to date).  This number is derived by searching for "buses" in the narrative section for committed Emergency Connectivity Fund program funding requests and removing laptop and tablet funding requests.

## III.     DISCUSSION

9.     In this Declaratory Ruling, we clarify that the use of Wi-Fi, or other similar access point technologies, on school buses serves an educational purpose and, therefore, the service and equipment that enable it are eligible for E-Rate funding.  Specifically, given the lack of a reliable broadband connection at students' homes and the need for connectivity to complete homework and other assignments before and after school hours,[30] we find that the use of these services on school buses is integral, immediate, and proximate to the education of students.  In addition, because the connectivity provided on school buses will serve students who otherwise cannot complete their homework before or after school hours, we find that the use of these services will be primarily for educational purposes consistent with our rules and section 254 of the Act.[31]  Accordingly, section 254(h)(1)(B) of the Communications Act authorizes the Commission to support the provision of communications services, including broadband, to schools and libraries for educational purposes, and this Declaratory Ruling fits squarely within that authority.[32]  We direct the Bureau to fund these services and seek comment on which specific services and equipment to fund as part of the funding year 2024 eligible services list proceeding.[33]

10.     As explained above, the Commission has previously determined that certain off-campus use of E-Rate-eligible services is considered an educational purpose, including the use of eligible services in the residential areas of certain residential schools that serve unique populations.[34]  Among the reasons

---

[30] *See supra* note 1 (highlighting that there are at least 16 million students nationwide that live in homes without a broadband connection and finding that teachers are more likely to assign homework that requires access to broadband and/or digital devices outside of schools as grade levels increase).

[31] 47 CFR §§ 54.503(c)(2)(ii)(A), 54.504(a)(1)(v) (requiring applicants to certify that E-Rate-supported services will be used primarily for educational purposes).

[32] 47 U.S.C. § 254(h)(1)(B) (authorizing reimbursement for "services that are within the definition of universal service under subsection (c)(3)," which itself authorizes the Commission to designate non-telecommunications services for support under E-Rate).  Section 254(h)(1)(B) does not contain any reference to "classrooms," and thus the dissenters' concerns that section 254(h)(2)(A) is limited to "access to advanced . . . services for . . . classrooms," are inapposite.  Nevertheless, we also note that Congress declined to define "classrooms" for this purpose, and recent history has shown that in today's world, teaching and learning often occur outside of brick and mortar school buildings and thus "classroom" may be interpreted more broadly.  Thus, we believe today's Declaratory Ruling independently is permitted by section 254(h)(2)(A) and is consistent with the Commission's recent exercise of its authority under that subpart to establish the Connected Care pilot program.  In that program, the Commission found that providing support for patients' home broadband connections expanded health care providers' ability to serve more patients through the program, thus enhancing eligible health care providers' access to advanced telecommunications and information services.  *Promoting Telehealth for Low-Income Consumers; COVID-19 Telehealth Program*, WC Docket No. 18-213, Report and Order, 35 FCC Rcd 3366, 3417-18, paras. 87-88 (2020). Consistent with that approach, we find that the use of Wi-Fi on school buses to aid the many students who lack robust internet access at home similarly enhances eligible schools' and libraries' access to advanced telecommunications and information services.  Finally, in today's Declaratory Ruling we clarify that the use of Wi-Fi in one particular location—the school bus—satisfies the "educational purpose" test in section 254(h)(1)(B) and independently satisfies the "classroom" test in section 254(h)(2)(A).  And, we emphasize that any further determination to support off-campus use of E-Rate-supported services would—consistent with our prior actions regarding off-campus use and the action we take today—require that the Commission first find that the off-campus provision of such services is "integral, immediate, and proximate to the education of students or the provision of library services to library patrons," and, therefore, would be considered to be an educational purpose.  Thus, we reject the dissents' suggestion that today's ruling has no limiting principle.

[33] On September 12, 2023, the Bureau issued a Public Notice seeking comment on the proposed eligible services list for funding year 2024.  *See Wireline Competition Bureau Seeks Comment on Proposed Eligible Services List for the E-Rate Program*, WC Docket No. 13-184, Public Notice, DA 23-819 (WCB Sept. 12, 2023).  We direct the Bureau to issue a supplemental Public Notice seeking comment on the specific services and equipment to fund.

[34] *See supra* Section II; *Schools and Libraries Sixth Report and Order*, 25 FCC Rcd at 18779, paras. 31-32.

for finding that the use of these services is an educational purpose, the Commission explained that providing support to the residential areas of these schools would "facilitate ongoing access to educational learning materials beyond the normal school day and increase the ability of those students to complete homework assignments, such as those that require broadband access for research projects, after school hours."[35]  Because the vast majority of students today require a reliable broadband connection to complete homework assignments, and given the lack of connectivity in students' homes, we similarly find that the use of Wi-Fi, or other similar access point technologies, on school buses is critical to meeting the ongoing educational needs of students and their ability to meaningfully engage in learning.  In addition, because students can spend hours on school buses traveling to and from school and other school-related activities, particularly in rural parts of the country, we conclude that this clarification is consistent with the public interest and promotes the effective use of E-Rate-supported services during those times.

11.     Indeed, as the COVID-19 pandemic has underscored, the need for broadband connectivity—particularly for those students that lack an adequate connection at home—is more critical than ever.  As commenters in the Bureau's remote learning and eligible services proceedings have stressed, having broadband connectivity is vital to learning in today's increasing digital world.[36]  Even before the pandemic, students without adequate broadband access at home have been shut out of being able to fully engage in their education, often having to resort to completing assignments from parking lots or other public spaces with free Wi-Fi or risk falling behind their peers.[37]  And, while the Emergency Connectivity Fund program has provided relief to these students, committing approximately $58.2 million for the purchase of Wi-Fi hotspots and broadband services for school buses to date, that support is limited in scope and duration—aimed at addressing, among other things, the remote learning needs of students during the COVID-19 emergency period and will sunset on June 30, 2024.[38]

---

[35] *See Schools and Libraries Sixth Report and Order*, 25 FCC Rcd at 18778-79, para. 31.

[36] *See, e.g.*, Education and Library Networks Coalition (EdLiNC) Comments, WC Docket No. 21-31, at 7 (rec. Feb. 16, 2021) (arguing that Homework Gap technologies and services have become prerequisites for many students to receive any education at all); Los Angeles Unified School District Comments, WC Docket No. 21-31, at 1 (rec. Feb. 12, 2021) (asserting that public education has shifted so that providing equipment and reliable connectivity to all teachers and students is fundamental to sustaining on- and off-campus learning); Common Sense Comments, WC Docket No. 21-31, at 9 (rec. Feb. 16, 2021) (stating that access to high-speed internet and devices is "inextricably linked to educational achievement opportunities for every child, in every state, whether they are learning in school or from home"); WIDPI FY 2022 ESL Reply at 1 ("As was clear to many before the pandemic, and became clear to all during the pandemic, students need internet access at home to participate in school."); Kajeet, Inc. Comments, WC Docket No. 13-184, at 1 (rec. Sept. 22, 2021) (noting that students, staff, and library patrons who lack broadband access "suffer the consequences of an inequitable and inferior learning environment").

[37] *See, e.g.*, Clare McLaughlin, *The Homework Gap: The 'Cruelest Part of the Digital Divide'*, National Education Association (Apr. 20, 2016), https://www.nea.org/advocating-for-change/new-from-nea/homework-gap-cruelest-part-digital-divide (explaining how the homework gap forces students to seek out free Internet access in commercial parking lots or libraries in order complete assignments, while many others are "simply unable to finish the work"); Carter Evans, *Calif. School district puts Wi-Fi on wheels to close digital divide*, CBS News (Apr. 6, 2016), https://www.cbsnews.com/news/california-coachella-valley-school-district-closes-digital-divide-with-wifi-on-school-buses/ (reporting that students without Internet access at home sit in cars with their parents on school campuses after school hours or go to Starbucks to complete homework); Jeff Amy, Larry Fenn & Michael Melia, *3 million US students don't have home internet*, AP News (June 10, 2019), https://apnews.com/article/smartphones-us-news-ap-top-news-hartford-ms-state-wire-7f263b8f7d3a43d6be014f860d5e4132 (describing how, in addition to offering Internet services on school buses and loaning out hotspots, many communities have compiled lists of Wi-Fi-enabled restaurants and businesses where children can go to complete schoolwork).

[38] *See supra* para. 7; *see also Emergency Connectivity Fund Report and Order*, 36 FCC Rcd at 8696, para. 16 (adopting as the first goal of the Emergency Connectivity Fund program helping to meet the need for connected devices and broadband Internet access services to facilitate remote learning during the COVID-19 pandemic for students, school staff, and library patrons).

12.     With this Declaratory Ruling, we take another step towards closing the existing Homework Gap.  Consistent with our precedent, we therefore clarify that the use of Wi-Fi, or other similar access point technologies, on school buses, as well as any E-Rate-eligible equipment needed to enable these services, meets our definition of an educational purpose and the provision of such services is eligible for E-Rate funding.  Accordingly, we direct the Bureau to make these services eligible for E-Rate funding as part of the upcoming eligible services list proceeding.[39]  Adapting the eligible services list to reflect how schools now can use advanced information services to connect their students allows the program to keep up with an "evolving level" of technological services, "taking into account advances in telecommunications and information technologies and services,"[40] just as the Commission has done in the past.[41]  In doing so, we seek to leverage the eligible services list process and the experience of E-Rate program participants (many of whom have applied and received funding commitments for Wi-Fi hotspots and broadband services for school buses through the Emergency Connectivity Fund program) to determine which specific services and equipment to fund for this purpose, as well as the costs associated with doing so.

13.     In paving a path forward to fund these services, we are mindful of our obligation to be prudent stewards of the limited E-Rate funding.  At the same time, our experience with the Emergency Connectivity Fund program thus far has shown that the cost of providing Wi-Fi for school buses is on average $1,840 per school bus per year.[42]  Coupled with the fact that the demand for E-Rate program funding has consistently fallen under the program's funding cap in recent years, we believe that any potential impact of our action on the E-Rate program budget and the Universal Service Fund would be nominal compared to the substantial benefit reaped by students.[43]  We direct the Bureau to seek comment

---

[39] *See supra* note 2.  To the extent the Bureau has said that Wi-Fi on school buses is not eligible for E-Rate funding, we reverse that finding here.  *See, e.g., FY 2022 Eligible Services List Order* at 3-5, paras. 8-9 (refraining from making Wi-Fi on school buses eligible for funding in funding year 2022 given the support available for Wi-Fi hotspots and services on buses through the Emergency Connectivity Fund program and the need to leverage the Commission's experience with the Emergency Connectivity Fund program to more fully explore how they might be eligible); *see also id.*, Appendix B at 12 (stating that "[o]ff- campus use even if used for an educational purpose is ineligible for support and must be cost-allocated out of any funding request.").

[40] 47 U.S.C. § 254(c)(1).

[41] *See, e.g., Schools and Libraries Sixth Report and Order*, 25 FCC Rcd at 18767-69, paras. 10-13 (adding dark fiber to the eligible services list).

[42] *See* Universal Service Administrative Company, *Emergency Connectivity Fund FCC Form 471*, https://opendata.usac.org/Emergency-Connectivity-Fund/Emergency-Connectivity-Fund-FCC-Form-471/i5j4-3rvr (last visited Sept. 21, 2022) (reporting data on what equipment and services for school buses have been committed in the Emergency Connectivity Fund program to date).  The average cost is derived by searching for "Wi-Fi" and "buses" in the narrative section for committed Emergency Connectivity Fund program committed funding requests.  Based on this search, the average cost for equipment is $1,009; installation, activation and initial configuration is $375; and recurring services for 12 months is $456.  Some E-Rate stakeholders have also asserted that the cost of Wi-Fi on school buses is workable within the E-Rate budget.  *See, e.g.*, KB & Associates FY 2017 Eligible Services List Comments, at 1-2 (calculating that the average costs associated with Wi-Fi on school buses are supportable within the E-Rate budget); *see also* Letter from Indra Sehdev Chalk, T-Mobile USA, Inc. to Marlene H. Dortch, Secretary, FCC, WC Docket No. 13-184, at 2 (filed May 31, 2023) (estimating that supporting Wi-Fi on school buses would increase the annual E-Rate program demand by no more than ten percent).

[43] For funding year 2023, the funding cap is $4.768 billion and demand is an estimated $2.944 billion.  *See Wireline Competition Bureau Announces E-Rate and RHC Programs' Inflation-Based Caps for Funding Year 2023*, CC Docket No. 02-6, WC Docket No. 02-60, Public Notice, DA 23-178 (WCB Mar. 3, 2023); Letter from Craig Davis, Vice President, Schools and Libraries Division, USAC, to Trent Harkrader, Chief, Wireline Competition Bureau, FCC (Mar. 29, 2023), available at https://www.fcc.gov/ecfs/document/10329233636144/1; *Wireline Competition Bureau Directs USAC to Fully Fund Eligible Category One and Category Two E-Rate Requests*, CC Docket No, 02-6, Public Notice, DA 23-425 (WCB May 19, 2023); *see also* Taylor Ekbatani, *Are Students Using School Bus Wi-Fi* (June 2, 2022), https://stnonline.com/special-reports/are-students-using-school-bus-wi-fi/ (highlighting how students

(continued....)

on this assessment and whether the estimated costs of providing these services on school buses is accurate.  In addition, consistent with our finding in the *2014 First E-Rate Order* that data plans and air cards for mobile devices are eligible *only* in instances when the school or library seeking support demonstrates that the individual data plans are the most cost-effective option for providing internal broadband access for mobile devices at the school or library, we direct the Bureau to seek comment on whether to similarly restrict funding for hotspots, data plans, and air cards for individual use on school buses when considering which specific services and equipment to fund as part of the funding year 2024 eligible services list proceeding.[44]

14.      Finally, while we recognize that there may be other legitimate off-campus uses that meet our definition of an educational purpose, we emphasize the limited nature of this Declaratory Ruling and limit our clarification to the use of Wi-Fi, or other similar access point technologies, and the necessary equipment for use on school buses only.

## IV.    ORDERING CLAUSES

15.      IT IS ORDERED that, pursuant to sections 1-4, and 254 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154 and 254, this Declaratory Ruling IS ADOPTED.

16.      IT IS FURTHER ORDERED that this Declaratory Ruling SHALL BE EFFECTIVE upon release.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

---

(Continued from previous page) ────────────────

have benefitted from Wi-Fi-enabled school buses that provide opportunities to "do their homework, review materials for tests, explore topics of interest, and work on their creativity and collaboration skills" during long commutes).

[44] *Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No. 13-184, Report and Order and Further Notice of Proposed Rulemaking, 29 FCC Rcd 8870, 8932-33, paras. 151-53 (2014).

**STATEMENT OF**
**CHAIRWOMAN JESSICA ROSENWORCEL**

Re:   *Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No. 13-184, Declaratory
      Ruling (October 19, 2023).

For more than two decades, the E-Rate program at the Federal Communications Commission has
helped connect school classrooms and libraries to high-speed, modern communications.  It got its start as
part of the Telecommunications Act of 1996.  Since that time, the E-Rate program has been a quiet
powerhouse.  It has helped support broadband in schools and libraries in urban America, rural America,
and everything in between.  But great programs do not thrive without continuous attention and care.  We
need to make sure E-Rate meets the moment and keeps doing good.

That is what led me to Vermont last week where I joined Senator Welch.  The Green Mountain
State in the Fall is something to behold.  But I was not there to take in the leaves and the seasonal vistas.
I was there to visit Williamstown, a rural town with a school up in the hills.  This is an area of the country
where students, like many in remote communities, spend a lot of hours on a school bus.  Lots of them ride
an hour to get to class in the morning and then ride an hour again back home at the end of each day.  It is
also an area where broadband connections are sparse.  But so much schoolwork today depends on
students having access to the internet—not just in class but at home.  And the students who have no
broadband at home fall into the Homework Gap.  They struggle with nightly assignments because they
lack the connections they need to succeed in school.

The school in this little town in Vermont decided they were going to do something about it.  They
got support to outfit their school buses with Wi-Fi.  For their rural students, they decided to turn ride time
into connected time for homework.  Call it Wi-Fi on wheels.  It was something to see.

But what stayed with me most from this visit was the story the school librarian told about one of
the students.  She had no internet connection at home.  At the end of every school day she rushed to the
library before the bus left and furiously printed out her assignments, web pages for research, and anything
else she needed for homework.  She printed stacks of paper day after day because she had no broadband
at home.

Let's be clear.  This is a kid with extraordinary grit.  But it shouldn't be this hard.

She reminds me of another student I met in rural New Mexico traveling with former Senator
Udall.  In Hatch, an area known for the chiles that are grown in its dry soil, I spoke with a high school
football player.  Like that student in Vermont, he did not have broadband at home.  He would head to
school on the bus and then take the bus long distances to get to games and then back home again.
Because when you are on the football team in a rural area, it can be a long haul to play neighboring
schools.  Whenever he returned after playing it was dark.  But he would sit late at night in the pitch black
of the school parking lot with a laptop for hours, using the school wireless signal just to do his homework.

Senator Luján took a look at this and joined with Senator Graham to introduce a bill to prod this
agency to use the E-Rate program to support broadband on school buses.  They saw what students in rural
communities go through and urged us to help get more kids connected.

Today we answer their call.  Today we make clear that schools can use E-Rate funds to outfit
school buses with Wi-Fi.  This is smart, creative, and consistent with the statute.  Section 254 of the
Communications Act sets up the E-Rate program and specifically provides us with authority to use it for
additional services for educational purposes.  Moreover, it was two decades ago when President Bush was
in the White House that the FCC made a similar decision to support E-Rate connections on school buses
by supporting cell phones and mobile wireless services for these vehicles.  We are just updating it to meet
the moment.

I am proud of what we are doing today.  We are going to help close the Homework Gap and get
more kids connected for school.  This is especially vital in rural areas, where commutes to school are long

and broadband is not always available.  It is no wonder then why four rural-focused education groups, the National Rural Education Association, the National Rural Education Advocacy Consortium, the Rural School and Community Trust, and Organizations Concerned About Rural Education have come out in support of this effort.  But they are not alone.  The National Education Association has also endorsed our approach, as has AASA, CoSN, SHLB, and the ALA.  There is good to do here and they see it clearly. So let's get to it.

For their work on this, I want to thank Allison Baker, Callie Coker, Kate Dumouchel, Jodie Griffin, Gabriela Gross, Trent Harkrader, Sue McNeil, Molly O'Conor, and Johnnay Schrieber from the Wireline Competition Bureau; Zachary Dileo from the Public Safety and Homeland Security Bureau; Alejandro Roark and Cara Voth from the Consumer and Governmental Affairs Bureau; Malena Barzilai, Michele Ellison, Richard Mallen, Linda Oliver, and William Richardson from the Office of General Counsel; and Guilia McHenry, Mark Montano, Stephen Tolbert, and Aleks Yankelevich from the Office of Economics and Analytics.

## DISSENTING STATEMENT OF
## COMMISSIONER BRENDAN CARR

Re:    *Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No. 13-184, Declaratory Ruling (October 19, 2023).

In March of 2021, when the United States, and the world at large, was still grappling with the COVID-19 pandemic, Congress passed the American Rescue Plan Act of 2021 (ARPA).  That law included nearly $7.2 billion for the FCC to establish a new Emergency Connectivity Fund (ECF).  In contrast to Section 254 of the Communications Act, which is the statutory authority for the E-Rate program, ARPA expressly authorized the FCC to fund eligible equipment and services at locations "other than the school."  Here at the Commission, I worked with my FCC colleagues to maximize the impact that this program would have on connecting school kids, and I voted in favor of agency rules implementing that emergency program, including funding for Wi-Fi connectivity on school buses.

In addition to the emergency relief provided under the ARPA's ECF, Congress allocated billions of additional dollars to other agencies since the start of COVID-19 that could be used for connecting school kids.  Indeed, the Department of Education's Elementary and Secondary School Emergency Relief Fund alone received approximately $190 billion in total funding.

So when this item was placed on the agenda for this month's open meeting, I asked some basic questions to understand what has worked with the billions of dollars already spent, what hasn't, and what are some lessons learned for the funding of Wi-Fi on school busses.  But the information was not there.

For example, the FCC has provided over $60 million in ECF funds to provide Wi-Fi on school busses so far, but we lack an accounting of the number of students that have been connected or the ways in which these connections have been used.  We apparently do not have any studies that measure the efficacy of this funding in terms of improved academic outcomes or that recommend ways that the initiative could be improved.  It also appears that DOE does not track any useful metrics for the billions of dollars it has already sent out the door—not on the number of Wi-Fi-enabled school busses funded, not on the number of children connected, and not on the impact of all of those funds.  I have previously sounded the alarm that a lack of coordination and accounting of federal broadband funding could result in significant waste and an inability to track the efficacy of federal spending.  I am concerned that is what we are seeing here.

Given the lack of data, it strikes me that the agency's decision-making process would benefit from seeking comment on some of these basic points.  That is why I would have been willing to vote in favor of a Notice of Proposed Rulemaking today.  I think the challenges here will only be compounded by proceeding directly to a declaratory ruling.

I am also concerned that we're expanding the USF program into an entirely new funding area without addressing some of the fundamental contributions, disbursement, and oversight concerns that I and others have been raising for years now.  We cannot continue to spend other peoples' money in this way without a real conversation at this agency about reform.  I have put ideas out there.  I would welcome a discussion about paths forward.

I also have serious legal concerns with this decision.  Ranking Member Cruz and Chair Rodgers recently reminded the Commission that, unlike ARPA and ECF, the FCC's "E-Rate authority is explicitly confined to classrooms."[1]  And Congress is clearly aware of this limitation, as evidenced by the explicit

---

[1] *See, e.g.,* Letter from Sen. Ted Cruz, Ranking Member, Senate Committee on Commerce, Science, and Technology, and Rep. Cathy McMorris Rodgers, Chair, House Committee on Energy and Commerce, to Hon.

(continued….)

provisions of ARPA that directed the Commission to extend funding beyond the school. Indeed, I am pretty confident that today's vote is just one step towards even further expansion in the not-too-distant future.

I am not being alarmist when I say this. Look no further than those who are calling on the FCC to take this action, including a recent statement from former FCC Chairman Tom Wheeler. In his words, "You've got to ask yourself the question, what is a school? And the school is where learning takes place. If that learning is in a classroom, or a study hall, or a school bus, the school is where learning takes place."

The problem with this Wheeler Wi-Fi plan is that it reads the express language Congress included in the statute right out of the Act. It shows that the plan has no limiting principle.

Those of us on the Commission today share so many common goals. But the FCC is not free to ignore the express limitations on our authority imposed by Congress—no matter how laudable the agency's intentions may be.

Accordingly, I am unable to support this item. I dissent.

---

(Continued from previous page) ————————————————

Jessica Rosenworcel, Chair, FCC (July 31, 2023). The text of the Communications Act is clear that, as relevant here, the agency's authority under Section 254(h)(2)(A) is limited to supporting the delivery of covered service to "public and non-profit elementary and secondary school classrooms." 47 U.S.C. § 254(h)(2)(A). Since the FCC is not limiting this decision to classrooms, today's order plainly exceeds the scope of the Commission's authority. To the extent that the Commission is relying Section 254(h)(1)(B) as support for today's decision, that reliance does not fare any better. Section 254(h)(1)(B) does not authorize the FCC to support, as relevant here, any service that the FCC says serves an educational purpose, Instead, Section 254(h)(1)(B) requires, in addition to a finding of educational purpose, that, as relevant here, the supported offering serves "elementary schools" or "secondary schools." The FCC makes no showing that its decision satisfies the Section 254(h)(1)(B) "schools" statutory gating requirement just like it does not satisfy the Section 254(h)(2)(A) "classroom" requirement.

**STATEMENT OF**
**COMMISSIONER GEOFFREY STARKS**

Re:     *Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No 13-184, Declaratory
         Ruling (October 19, 2023).

For some students their school day starts well before the first bell.  They catch the bus early, before the sun rises, and board the school bus to start their long commute to school.  It's been a longstanding way of life, in particular, for many rural and Tribal students.  Indeed, all the way back in 2004, the New York Times published an article about Navajo students who had a four hour bus commute to school.[1]  The same article, citing a survey of elementary school principals, found that it was common for rural children to spend 90 minutes on buses getting to school.[2]

Take my home state of Kansas.  It's a big state where farms stretch for miles, and often in the more rural parts of the state, you can't even see your neighbor.  So when it's time for school, students who catch the bus frequently have a long road ahead of them.  But what if we could do more.  Thanks to advances in connectivity, students now could be using this time to and from school productively – to study, learn, and do their homework.  This time could be especially valuable when you consider that many of those same students may lack quality broadband at home.

And there is precedent for supporting connectivity on school buses.  For example, back in 2003, the Commission determined a school bus driver's use of wireless telecommunications services while delivering children to and from school was eligible for E-Rate support.[3]  If we are supporting the driver's use of connectivity, it is past time that we offer the benefit to students on the same bus.

I support this item and thank the Commission staff for their hard work.

---

[1] Sam Dillon, *In Rural Utah, Students' School Day Stretches to 12 Hours (With 4 on the Bus)*, New York Times (May 28, 2004), https://www.nytimes.com/2004/05/28/us/in-rural-utah-students-school-day-stretches-to-12-hours-with-4-on-the-bus.html.

[2] *Id.*

[3] *Schools and Libraries Universal Service Support Mechanism*, CC Docket No. 02-6, Second Report and Order and Further Notice of Proposed Rulemaking, 18 FCC Rcd 9202, 9208-9, para. 19 (2003).

**Federal Communications Commission**                    **FCC 23-84**

### DISSENTING STATEMENT OF
### COMMISSIONER NATHAN SIMINGTON

Re:     *Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No. 13-184, Declaratory
Ruling (October 19, 2023).

I am disappointed that the Commission has decided to pursue this unlawful course of action. The Telecommunications Act could not state more clearly that E-Rate may only be used to subsidize internet connectivity for elementary schools, secondary schools, and libraries, and a school bus is neither a school nor a library. This item eviscerates Congress's restrictions on E-Rate and makes a mockery of the law. If Congress had meant for E-Rate to apply to any educational purpose, broadly defined, it would have said so. Instead, it specifically limited the applicability of the program to schools and libraries. All attempts to expand it beyond those bounds are unlawful.

That alone is an open-and-shut case against this declaratory ruling. But even if it was lawful, using E-Rate for school bus Wi-Fi would still be wasteful and unlikely to benefit students and teachers. The federal government already subsidizes mobile internet connections through the ACP and Lifeline programs, and the vast majority of children old enough to use the internet without intense supervision already have internet-connected smartphones, many with mobile hotspot capability. On top of that, anyone who has ever ridden a school bus should be skeptical that any significant proportion of children will sit quietly and do homework on their laptops instead of socializing with their friends on the bus and browsing social media on their phones.

I applaud Senators Cruz, Budd, and Capito for introducing a bill yesterday that would require that schools receiving E-Rate funds prohibit children from using school connections to browse social media. I agree with them that the federal government should not be complicit in giving children harmful access to social media without parental supervision, but as the sponsors of the bill make clear, passage of the bill would not remedy the unlawfulness and wastefulness of this school bus Wi-Fi program.

Instead of pursuing illegal expansions of E-Rate outside of schools and libraries, the FCC should be considering reforms of the E-Rate program to combat waste, fraud, and abuse and simplify its administration. One such reform—a federally run competitive bidding portal that will allow us to better enforce E-Rate's competitive bidding rules—is currently languishing before the Commission, and I encourage the Chairwoman to bring a final order implementing it to a Commission vote.

# STATEMENT OF
# COMMISSIONER ANNA M. GOMEZ

Re:     *Modernizing the E-Rate Program for Schools and Libraries*, WC Docket No. 13-184, Declaratory
        Ruling (October 19, 2023).

High-speed broadband access is an essential part of students' learning in the 21st century.  As the pandemic taught us, the "classroom" is wherever learning occurs—school campuses, football fields, parking lots, picnic tables, kitchen tables, and, school buses.  More so, the pandemic highlighted the fact that no longer is connectivity merely necessary for educational *success*, it is required for education, *period*.  And yet, nearly 17 million school children do not have reliable high-speed broadband at home.

Today, over half of the nation's public school students use a school bus to get to school.  On average, students spend close to 45 minutes a day on the bus, and many spend longer.  What's more concerning is that the students who travel the longest distances are also the ones who are least likely to have reliable high-speed connectivity at home.  Both long commutes to school and lack of connectivity at home can negatively impact academic outcomes and achievement.  This is an issue of equity—as communities that are most affected by long commutes and lack of connectivity, are those that have been historically underserved—rural, Tribal, black, brown, and Latino communities.

We must use all available tools to ensure all students have what they need for academic success.  That is why I am grateful to the Chairwoman for her leadership on closing the Homework Gap, and drawing attention to this aspect of the digital divide.  Closing the Homework Gap is in all of our interest as the next generation prepares to be competitive in the evolving global economy.  The Bureau of Labor Statistics projects employment in computer and information technology to grow much faster than other occupations in the next ten years.  We must ensure that we are providing today's students with the academic resources for tomorrow's economic success.

To address this modern problem, we need to think about modern and innovative solutions.  That is why I support today's Declaratory Ruling, which clarifies that Wi-Fi on school buses is eligible for E-Rate support.  It is an important piece of the puzzle to address the needs of students and teachers through the E-Rate program.  It is going to take a multi-pronged approach to eliminate the Homework Gap, and this action is commendable because it leverages a piece of the problem to become part of the solution for the many students with long bus rides.  Moreover, I support this action because we have evidence that it works.  Thanks to Congress's recognition of the importance of connectivity during the pandemic and the FCC's quick action to stand up the Emergency Connectivity Program, we know that Wi-Fi on school buses can make a difference for many students, and particularly for those communities most often caught on the wrong side of the digital divide.

I look forward to continuing to work to close the Homework Gap with my colleagues, school administrators, teachers, and students.  Thank you to the staff of the Wireline Competition Bureau for their work on this Declaratory Ruling.  It has my support.