No. 23-60641

# In the United States Court of Appeals for the Fifth Circuit

MAURINE MOLAK;
MATTHEW MOLAK,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents*.

Petition for Review of an Order
of the Federal Communications Commission
FCC 23-84; WC Docket No. 13-184

**RESPONSE TO MOTION TO DISMISS**

Yaakov M. Roth
yroth@jonesday.com
David K. Suska
dsuska@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

***Counsel for Petitioners***

# CERTIFICATE OF INTERESTED PERSONS

No. 23-60641, *Molak et al. v. FCC et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Petitioners:

1. Maurine Molak
2. Matthew Molak

Petitioners' Counsel:

1. Jones Day
2. Jacob (Yaakov) M. Roth
3. David K. Suska

Respondents:

1. Federal Communications Commission
2. United States of America

Respondents' Counsel:

1. P. Michele Ellison
2. Jacob Matthew Lewis
3. Sarah E. Citrin
4. Rachel Proctor May

5. Robert B. Nicholson

6. Robert Wiggers

Intervenor:

1. Schools, Health & Libraries Broadband Coalition

Intervenor's Counsel:

1. Andrew Jay Schwartzman

*/s/ Jacob Moshe Roth*
*Counsel for Petitioners*

**INTRODUCTION**

The challenged Declaratory Ruling defies unambiguous statutory limits on the FCC's authority. The statute empowers the agency to make rules to enhance the access of "classrooms" and "libraries" to telecommunication services. The Declaratory Ruling instead subsidizes the provision of Wi-Fi on *school buses*. Simply put, a school bus is neither a classroom nor a library—even when retrofitted with a hotspot.

The FCC knows the Declaratory Ruling rests on shaky legal ground. For more than a decade, the agency consistently disclaimed authority to subsidize services beyond the schoolhouse gate. The agency changed its mind only recently, in an attempt to evade the imminent expiration of a COVID-era statutory authorization that expressly permitted off-campus support but that is soon sunsetting.

Given this backdrop, it is no surprise the Government hopes to avoid judicial review altogether. But circuit precedent squarely forecloses its arguments in support of dismissal. As this Court has repeatedly (and recently) held, petitioners who claim that an agency exceeded the scope of its authority may invoke the Hobbs Act regardless of whether they participated in the agency proceedings. And 47 U.S.C. § 405(a) does not require the futile step of petitioning the agency for reconsideration where, as here, the agency has already passed on the arguments petitioners wish to press.

This Court should deny the motion to dismiss outright. At minimum, the Court should carry the motion with the case, to allow petitioners to develop their arguments against the FCC's statutory authority to issue the Declaratory Ruling.

1

# BACKGROUND

A.   **Universal Service and Its Funding Scheme.**

The Communications Act of 1934 established the FCC and charged the agency with advancing "universal service" in communications—the widespread availability of quality services at reasonable rates. Pub. L. No. 73-416, 48 Stat. 1064, tit. I, § 1 (codified as amended at 47 U.S.C. § 151). Originally, the FCC pursued this goal through regulations that required telephone companies to charge above-cost rates to certain customers in order to subsidize below-cost rates to other customers (*e.g.*, rural callers). *See Texas Off. of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 405–06 (5th Cir. 1999).

The Telecommunications Act of 1996 revamped this regime. Section 101 of the 1996 Act retired the legacy patchwork arrangement of cross-subsidies. Pub. L. No. 104-104, 110 Stat. 56, 71 (codified at 47 U.S.C. § 254). It instead directed the FCC to design "mechanisms" to "advance" universal service. 47 U.S.C. § 254(b)(5). The FCC did so by creating four universal service programs, including the schools and libraries support mechanism known as E-Rate. *See generally* 47 C.F.R. §§ 54.500–54.523.

E-Rate and the FCC's other universal service programs are funded through fees (known as "contributions") that are imposed on "[e]very telecommunications carrier that provides interstate telecommunications services." 47 U.S.C. § 254(d). Ahead of each quarter, the Universal Service Administrative Company (USAC)—a private entity to which the FCC has delegated certain authority—projects demand for the programs as well as certain revenues carriers will collect. 47 C.F.R. § 54.709(a). After reviewing

the numbers, the FCC sets a "contribution factor." *Id.* § 54.709(a)(3). The contribution factor is "based on the ratio of total projected quarterly expenses of the universal service support mechanisms to the total projected collected end-user interstate and international telecommunications revenues." *Id.* § 54.709(a)(2). In short, it aims to assess each carrier its *pro rata* share of the cost of the programs.[1]

USAC then applies the contribution factor to each carrier's "contribution base," which determines the dollar value of each carrier's contribution. *Id.* § 54.709(a)(3). The payments are directed into the Universal Service Fund (USF). The amount collected is significant. For just the first quarter of this year, the FCC expects to raise $2.1 billion— about four times the FCC's entire annual budget. FCC, Proposed First Quarter 2024 Universal Serv. Contribution Factor, No. CC96-45, 2023 WL 8697307, at *1 (Dec. 14, 2023); FCC, Budget Estimates to Congress, 2023 WL 2523588, at *3 (Mar. 1, 2023).

Carriers themselves do not bear the significant expense of their contributions. Instead, they "almost always" pass through these costs to their customers—individuals and businesses who subscribe to their plans. *Vt. Pub. Serv. Bd. v. FCC*, 661 F.3d 54, 57 (D.C. Cir. 2011). Indeed, FCC regulations expressly authorize carriers to "recover [their] federal universal service contribution costs" through "charges to end users" in the form of a "line item on a customer's bill." 47 C.F.R. § 54.712(a).

---

[1] This Court is currently considering, *en banc*, whether the FCC's delegation to USAC violates the Constitution. *See Consumers' Rsch. v. FCC*, 63 F.4th 441 (5th Cir. 2023), *reh'g en banc granted, opinion vacated*, 72 F.4th 107 (5th Cir. 2023) (mem.).

3

### B. The E-Rate Program.

As noted above, one of the FCC's universal service programs is E-Rate, which subsidizes "telecommunications, Internet access, and internal connections [for] eligible schools and libraries." FCC, E-Rate: Universal Service Program for Schools and Libraries, https://www.fcc.gov/consumers/guides/universal-service-program-schools-and-libraries-e-rate. When a school or library receives E-Rate support, USAC pays for it out of the USF. *See* 47 C.F.R. §§ 54.514, 54.702.

Statutory authority for E-Rate derives from 47 U.S.C. § 254(b) and 254(h). The former provision codifies a general principle: that "[e]lementary and secondary schools and classrooms … and libraries should have access to advanced telecommunications services." *Id.* § 254(b)(6). The latter provision effectuates that principle, by directing the FCC to establish rules "to enhance … access to advanced telecommunications and information services for all public and nonprofit elementary and secondary school classrooms … and libraries." *Id.* § 254(h)(2)(A).

### C. The Declaratory Ruling.

In October 2023, in the order under review here, the FCC took E-Rate in a new direction. In a 3–2 decision, the FCC expanded E-Rate to subsidize the provision of Wi-Fi not in *classrooms* or *libraries*, but on *school buses*. Declaratory Ruling, *In the Matter of Modernizing the E-Rate Program for Schools and Libraries*, FCC 23-84, WC Docket No. 23-184, ECF 1-1 Exh. A (Declaratory Ruling). A Declaratory Ruling is a type of order that does not entail notice-and-comment procedures. *See* 47 C.F.R. § 1.2(a).

4

The FCC acknowledged that the Declaratory Ruling breaks from past practice. As it explained, "[t]he E-Rate program does not provide support for most off-campus services." Declaratory Ruling ¶ 4. But the agency forged ahead anyway, reasoning that Wi-Fi on school buses serves "an educational purpose," and that expansion of E-Rate is an important substitute for the soon-to-expire Emergency Connectivity Fund, a COVID-era program that expressly permits off-campus support but has a statutory expiration date of June 30, 2024. *Id.* ¶¶ 2, 7–8, 11–13. Chairwoman Rosenworcel added that the novel expansion of E-Rate was necessary to "meet the moment." *Id.* at 10.

Commissioners Carr and Simington dissented. *Id.* at 12–13, 15. Both expressed grave doubts about the legality of the Declaratory Ruling. Section 254 speaks of support for "classrooms" and "libraries," they noted, and a school bus is none of those things. *Id.* at 12–13, 15. Commissioner Simington also voiced skepticism about the educational benefits of the decision, suggesting that few children "will sit quietly and do homework" on the bus "instead of socializing with their friends … and browsing social media." *Id.* at 15. "[T]he federal government should not be complicit in giving children harmful access to social media without parental supervision." *Id.*

### D.   This Action.

Maurine and Matthew Molak are a married couple residing in San Antonio, Texas. They pay on their monthly phone bill a "Federal Universal Service Charge" for each of their telephone numbers. These payments fund the universal service programs, including the E-Rate Program, through the regulatory scheme described above.

5

Petitioners filed this action to challenge the Declaratory Ruling as contrary to law. They are aggrieved by the Declaratory Ruling because it will increase the outlays of the E-Rate Program and therefore the amount of Federal Universal Service Charge line-items they pay each month. Their petition for review invokes 47 U.S.C. § 402(a) and the Hobbs Act, 28 U.S.C. §§ 2341–2353. Petition for Review at 1, ECF 1-1.

Petitioners' interest in this matter goes beyond their pocketbook injury. In 2016, their son David tragically took his own life at the age of 16. In the months before his death, David had become overtaken with grief due to harassment and threats received through text messages and social media. Soon after losing David, his family started David's Legacy Foundation, dedicated to eliminating bullying (including cyberbullying) through education, legislation, and legal action. Petitioners believe that the Declaratory Ruling undermines this critical mission by enabling unsupervised social-media access.

## ARGUMENT

The Government argues that this Court must dismiss the petition for review for lack of jurisdiction under the Hobbs Act and 47 U.S.C. § 405(a). That is incorrect. Precedent squarely forecloses the Government's arguments on both scores.

## I. THIS COURT HAS JURISDICTION UNDER THE HOBBS ACT.

This Court has repeatedly held that petitioners may seek review under the Hobbs Act of an agency's order, regardless of whether they participated in the agency's proceedings giving rise to the order, so long as their claim is that the agency exceeded the scope of its statutory authority. That is precisely petitioners' claim here.

**A.** The Hobbs Act provides that "[a]ny party aggrieved by" certain agency "order[s]" may petition a circuit court for review. 28 U.S.C. § 2344. The FCC does not deny that the Declaratory Ruling is among the class of "orders" that the statute makes reviewable. Nor does it dispute that petitioners are "aggrieved" in the relevant sense, or challenge their Article III standing (which petitioners will establish with their merits briefing, as required). *See* Mot. at 10 n.2. Instead, the Government contends that § 2344 does not confer jurisdiction over this petition because petitioners were not "party" to the agency proceedings that resulted in the Declaratory Ruling. The Government says this "party participation requirement" is jurisdictional and so the Court must grant the motion to dismiss. Mot. at 13.

The FCC's party-participation argument flies in the teeth of binding precedent. "This circuit recognizes an *ultra vires* exception to the party-aggrieved status requirement … where a 'person may appeal an agency action even if not a party to the original agency proceeding' … where 'the agency action is attacked as exceeding [its] power.'" *Texas v. NRC*, 78 F.4th 827, 839 (5th Cir. 2023). This is not a one-off exception, but a well-established one. It was recognized not just in *Texas v. NRC*, but also in prior cases. *See Wales Transp., Inc. v. ICC*, 728 F.2d 774, 776 n.1 (5th Cir. 1984); *Am. Trucking Ass'ns, Inc. v. ICC*, 673 F.2d 82, 85 n.4 (5th Cir. 1982). Indeed, as this Court recognized in *American Trucking*, the exception traces to even earlier Supreme Court decisions. *See* 673 F.2d at 85 n.4 (citing *Edward Hines Yellow Pine Trustee v. United States*, 263 U.S. 143, 147 (1923), and *Skinner & Eddy Corp. v. United States*, 249 U.S. 557, 563–64 (1919)).

7

The *ultra vires* exception allows the Court to adjudicate "those portions of [a petitioner's] challenges that argue the [agency] acted beyond its statutory authority." *Texas v. NRC*, 78 F.4th at 839 (citing *Wales Transp.*, 728 F.2d at 776 n.1). That is the ballgame here, as petitioners' only argument is that the Declaratory Ruling exceeds the FCC's authority under the Communications Act. *See* Petition for Review at 2 (asserting that the Declaratory Ruling "exceeds the FCC's statutory authority"). The Hobbs Act therefore provides rather than precludes jurisdiction over the petition for review.

**B.** The FCC does not deny that the *ultra vires* exception exists. It simply urges the Court not to apply it. These arguments are unavailing.

The Government first asserts that this Court has "only twice" found the exception applicable. Mot. at 14. Even assuming that count is the right one—as noted above, other cases clearly *recognize* the exception if they do not *apply* it—it does not help the Government's cause. The two cases that the agency acknowledges, *Texas v. NRC* and *Wales Transportation*, are precedents of this Court, each entitled to respect under the "rule of orderliness." *Texas v. NRC*, 78 F.4th at 839 n.3.[2] The Government cannot brush these decisions aside on the theory that there are not dozens more like them. Two binding precedents are more than sufficient to sink the FCC's dismissal bid.

---

[2] The Court has before it petitions for rehearing *en banc* in *Texas v. NRC*. Fed. Respondents' Pet. for Reh'g En Banc, No. 21-60743 (5th Cir. filed Oct. 24, 2023); Intervenor Interim Storage Partners, LLC's Pet. for Reh'g En Banc, No. 21-60743 (5th Cir. filed Oct. 24, 2024). Those petitions primarily address the merits of that dispute rather than the Hobbs Act. *See* Fed. Respondents' Pet. at 12–19; Intervenor Interim Storage Partners, LLC's Pet. at 10–18.

8

The Government next observes that some other circuits have declined to adopt the exception. Mot. at 14. But as this Court stated last year when confronted with the same observation, "the exception remains good law in this circuit." *Texas v. NRC*, 78 F.4th at 839 n.3. At this stage, at least, that is the end of the analysis.

Finally, the FCC contends that the exception is not applicable here because "[t]his petition involves a challenge to the details of a program that Congress expressly authorized," and only a " 'plain' violation of an unambiguous and mandatory provision" can support an exercise of jurisdiction. Mot. at 15–16 (quoting *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 293 (5th Cir. 1999)). This confused assertion puts the cart before the horse. The very question presented by the petition for review is whether Congress authorized the FCC to issue the Declaratory Ruling. The agency cannot assume the answer is yes for the purpose of denying the Court's power to decide the question.

As for the idea that the violation must be "plain," that conflates the *ultra vires* exception to the party-participation requirement of the Hobbs Act with an analytically distinct concept some courts have invoked to exercise "equitable jurisdiction" to review agency action absent an express statutory cause of action. Mot. at 15. The cases that the Government cites—*Leedom v. Kyne*, 358 U.S. 187 (1958), *American Airlines*, 176 F.3d 283, and *Federal Express Corp. v. Department of Commerce*, 39 F.4th 756 (D.C. Cir. 2022)— all concern that latter scenario. They are inapposite here, as petitioners do not rely on a theory of implied equitable jurisdiction. Petitioners rely instead on the Hobbs Act and this Court's precedents applying it.

9

In all events, the FCC's statutory violation here *is* "plain," as petitioners intend to establish in their merits briefing. The only case the Government cites as finding the exception inapplicable, *Merchants Fast Motor Lines v. ICC*, 5 F.3d 911 (5th Cir. 1993), is readily distinguishable. The validity of the ICC's action there turned on whether certain transportation was *interstate* or *intrastate*—but the agency itself was empowered to make that finding, so its determination was by definition not *ultra vires*. *Id.* at 922. By contrast, here the FCC was given the power to subsidize service only for classrooms and libraries, and the Declaratory Ruling unambiguously exceeded the scope of that power.

## II. SECTION 405(A) DOES NOT PRECLUDE REVIEW.

The FCC is also incorrect to assert that 47 U.S.C. § 405(a) requires a jurisdictional dismissal because petitioners did not first ask the agency to reconsider the Declaratory Ruling. Section 405(a) sets out an *exhaustion requirement*, not a *jurisdictional rule*. And precedent holds that this exhaustion requirement does not preclude review where, as here, the agency considered and rejected the arguments underlying the petition.

**A.** Section 405(a) provides that "[t]he filing of a petition for reconsideration shall not be a condition precedent to judicial review … except where the party seeking such review (1) was not a party to the proceedings resulting in such order, decision, report, or action, or (2) relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass." 47 U.S.C. § 405(a). By its terms, this is not a jurisdictional requirement. *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–23 (2023) (holding that Congress must speak

clearly to create jurisdictional rules). Instead, it codifies the "doctrine of exhaustion of administrative remedies." *WATCH v. FCC*, 712 F.2d 677, 681 (D.C. Cir. 1983); *accord Off. of Commc'n of United Church of Christ v. FCC*, 779 F.2d 702, 706 (D.C. Cir. 1985). Its purpose is to prevent a petitioner from "playing a game of 'gotcha'" with the agency, by waiting to raise objections until agency's proceedings are over. *Time Warner Ent. Co., L.P. v. FCC*, 144 F.3d 75, 81 (D.C. Cir. 1998); *see also Texas v. NRC*, 78 F.4th at 838 (emphasizing that the principal statutory focus is "ensur[ing] that the agency had the opportunity to consider the issue that petitioners are concerned with").

Because § 405(a) is an exhaustion requirement, it is subject to "the established exceptions to the exhaustion doctrine in general." *United Church of Christ*, 779 F.2d at 706. One such exception is where the agency "had an 'opportunity to pass' on [the petitioner's] claims." *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 380 (D.C. Cir. 2020) (Katsas, J.) (quoting *United Church of Christ*, 779 F.2d at 706–07). As the D.C. Circuit recently explained in a case like this one, that can occur not only through a petition for reconsideration, but also "when another party raises the issue; when a dissenting Commissioner raises the issue; or when the agency addresses it anyway." *Competitive Enter. Inst.*, 970 F.3d at 380 (citing *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 280 (D.C. Cir. 1997); *ICO Glob. Commc'ns (Holdings) Ltd. v. FCC*, 428 F.3d 264, 269 (D.C. Cir. 2005); and *EchoStar Satellite L.L.C. v. FCC*, 704 F.3d 992, 996 (D.C. Cir. 2013)). In those scenarios, a reconsideration petition is *not* a precondition to judicial review. *See Competitive Enter. Inst.*, 970 F.3d at 380–81; *Time Warner*, 144 F.3d at 79–81; *United Church*

11

*of Christ*, 779 F.2d at 706–07.  Citing *Time Warner* approvingly, this Court has agreed that "[w]here the Commission has considered an argument, § 405 does not preclude review of a petitioner's claim." *Comsat Corp. v. FCC*, 250 F.3d 931, 937 (5th Cir. 2001); *see also Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 820 (5th Cir. 2018) (similar).

Here, there is no disputing that the FCC had an opportunity to consider the legal arguments petitioners intend to advance.  Multiple parties filed comments with the FCC making the same arguments about how the Declaratory Ruling exceeds the limits of the agency's statutory authority.  *See, e.g.*, Comments of Virginians for Safe Technology, WC Docket No. 13-184, at 1 (filed Oct. 18, 2023), https://www.fcc.gov/ecfs/search/search-filings/filing/1018442212960.  Members of Congress did the same in a letter to the Commissioners.  *See* Letter from Sen. Ted Cruz, Ranking Member, Comm. on Commerce, Science, and Technology, to Hon. Jessica Rosenworcel, Chair, FCC (July 31, 2023), https://docs.fcc.gov/public/attachments/DOC-396295A1.pdf.  The dissenting statements of Commissioners Carr and Simington echoed those arguments. *See* Declaratory Ruling at 12–13, 15.  And the FCC ultimately addressed these concerns on the merits (or at least purported to).  *See id* ¶¶ 4, 9 & n.32.

In sum, not only did the FCC have *opportunity* to pass on the arguments, the FCC *did* pass on the arguments—and rejected them.  Petitioners were thus entitled to seek review in this Court without first making a futile plea that the agency change its mind. *Cf.* 47 C.F.R. § 1.429(*l*)(3) (providing for dismissal of petition for reconsideration resting on "arguments that have been fully considered and rejected by the Commission").

**B.** The Government does not cite a single case dismissing a petition for review based on failure to file a petition for reconsideration with the agency. It makes a couple of fleeting references to *Hill v. FCC*, 496 F. App'x 396 (5th Cir. 2012), for the generic proposition that failure to satisfy § 405(a) precludes judicial review. Mot. at 11, 12. But not only is *Hill* non-precedential, it actually supports petitioners. As this Court explained there, § 405(a) merely requires that the FCC had "an opportunity to pass on the arguments the party presents for judicial review." 496 F. App'x at 402 (quoting *Comsat*, 250 F.3d at 937). That is the correct understanding of § 405(a), per the above. And, again, there is no disputing that the FCC had such an opportunity here.

Ultimately, the Government just points to § 405(a) and insists that petitioners had "ample opportunity" to present their arguments to the agency. Mot. at 11. Even if so—and it is, at minimum, unrealistic to expect consumers to stay abreast of agency actions taken without notice-and-comment—that does not interpose a jurisdictional bar in these circumstances. Nothing obstructs this Court's review on the merits.

## CONCLUSION

The Court should deny the motion to dismiss. At minimum, the Court should carry the motion with the case, as it often does. *See, e.g.*, Order, *Texas v. NRC*, No. 21-60743 (Nov. 21, 2021); Order, *Amawi v. Paxton*, No. 21-50360 (July 26, 2021). That would allow petitioners to develop their arguments against the FCC's authority to issue the Declaratory Ruling, which could bear on both the *ultra vires* exception to the party-aggrieved requirement and whether petitioners' arguments were properly exhausted.

Date: February 9, 2024						Respectfully submitted,

							*/s/ Jacob Moshe Roth*
							Jacob (Yaakov) M. Roth
							yroth@jonesday.com
							David K. Suska
							dsuska@jonesday.com
							JONES DAY
							51 Louisiana Avenue, N.W.
							Washington, D.C. 20001
							Telephone: (202) 879-3939

							**Counsel for Petitioners**

# CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, the foregoing response was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. I certify that all parties required to be served have been served.

Dated: February 9, 2024          Respectfully submitted,

                                         s/ *Jacob Moshe Roth*
                                         *Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because it contains 3,538 words, excluding exempted text.

2. This document complies with the type-face and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in proportionally spaced 14-point Garamond font using Microsoft Word 365.

s/ <i>Jacob Moshe Roth</i><br>
<i>Counsel for Petitioners</i>