No. 23-60641

# In the United States Court of Appeals
# for the Fifth Circuit

MAURINE MOLAK;
MATTHEW MOLAK,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents*.

Petition for Review of an Order
of the Federal Communications Commission
FCC 23-84; WC Docket No. 13-184

**OPPOSITION TO MOTION TO HOLD CASE IN ABEYANCE**

Yaakov M. Roth
yroth@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

David K. Suska
dsuska@jonesday.com
JONES DAY
150 W. Jefferson Ave.
Suite 2100
Detroit, MI 48226
Telephone: (313) 733-3939

***Counsel for Petitioners***

Petitioners' challenge to the FCC's Declaratory Ruling is fully briefed, with oral argument scheduled to occur in just three weeks. Yet again seeking to evade review, however, the FCC now asks for the case to be held in abeyance for the better part of a year, on the mere *possibility* that the Supreme Court *may* supplant well-established Circuit precedent in a manner that *may* bear on this case. Meanwhile, the agency will effectively secure victory—by spending tens of millions of dollars with no semblance of statutory authority. That would impose irreparable harm on Petitioners and the public, and likely trigger the need to seek an interim stay of the agency's order. This Court should thus deny the FCC's motion and proceed with oral argument as scheduled.

**1.** The FCC's motion is based on the Supreme Court's grant of certiorari this month in *Nuclear Regulatory Commission v. Texas* (No. 23-1300) and a related petition. The consolidated cases present multiple questions for the Court's consideration. Among them is whether respondents (including the State of Texas) were entitled to challenge an order of the Nuclear Regulatory Commission (NRC) under the Hobbs Act, 28 U.S.C. § 2344, despite not having been parties to the agency adjudication that gave rise to that order. The FCC speculates that the Supreme Court "may" hold that those respondents could not seek review, notwithstanding this Court's longstanding *ultra vires* exception to the party-participation requirement, and further argues that such a holding would also foreclose Petitioners from pursuing their challenge. Mot. 1. Based on that "possibility" alone (Mot. 4), the agency seeks abeyance until the *NRC* case is briefed, argued, and resolved, likely in June 2025 (more than eight months from now).

1

2. The potential implications of an *NRC* decision are highly speculative. There are a host of reasons why the Supreme Court's decision may end up having no effect whatsoever on this case.

*First*, the Supreme Court may have no occasion to address whether there exists an *ultra vires* exception to the party-participation requirement of the Hobbs Act. One of the *NRC* respondents *did* seek to intervene in the agency proceeding, and that ought to be sufficient to qualify it as a "party" entitled to seek review. *See Texas v. NRC*, 95 F.4th 935, 936 (5th Cir. 2024) (Jones, J., concurring in denial of rehearing). After all, it would be perverse if an agency could deny intervention to an aggrieved person and thereby shield itself from judicial scrutiny. *See id.* The same respondent also filed comments before the agency, *Texas v. NRC*, 78 F.4th 827, 834 (5th Cir. 2023), a step many courts treat as sufficient to count as party participation, *e.g.*, *ACA Int'l v. FCC*, 885 F.3d 687, 711–12 (D.C. Cir. 2018). Alternatively, the Court may well conclude that the NRC did not exceed its statutory authority in the licensing order at issue. The Court granted review of that question too, and resolving it in the agency's favor would make it unnecessary to decide the bounds of the *ultra vires* exception. *Cf. NRC*, 95 F.4th at 944 (Higginson, J., dissenting from denial of rehearing).

*Second*, even if the Supreme Court reaches the question whether any *ultra vires* exception exists, the Court may well affirm that it does. As Judge Jones has explained, that exception is firmly rooted in venerable Supreme Court precedent and bolstered by the presumption in favor of judicial review of agency action. *See id.* at 940–41 (Jones,

J., concurring in denial of rehearing). And recent Supreme Court decisions call for a healthy skepticism about statutory interpretations proffered by the government that would leave aggrieved citizens with no way to challenge unauthorized agency acts. *See, e.g.*, *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2459 (2024) (rejecting government's interpretation of 28 U.S.C. § 2401, which would have left many "injured by agency action" with "no recourse"); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (rejecting government's interpetation of two "special statutory review scheme[s]," which would have cut off access to immediate judicial review).

*Third*, even if the Court reaches the Hobbs Act question and holds that the *NRC* respondents were not entitled to invoke any *ultra vires* exception, that determination would likely be limited to certain features of that case—in particular, that the proceeding in *NRC* was an agency *adjudication* and that other pertinent statutes pointed in favor of limiting participation to those who had successfully intervened in the adjudication. *See* 95 F.4th at 944 (Higginson, J., dissenting from denial of rehearing). Indeed, the Solicitor General's certiorari petition argued at length that background procedural principles of agency adjudication counseled in favor of limiting review to those who participated in the adjudication itself through intervention. *See* Mot. Exh. A (*NRC* Pet.) at 10, 14, 15–16, 18. And the petition further emphasized that the Atomic Energy Act—the statute at issue in *NRC*—itself limits participation in licensing proceedings to those formally "admit[ted]." *See id.* (quoting 42 U.S.C. § 2239(a)(1)(A)).

3

The FCC Declaratory Ruling that Petitioners challenge here, by contrast, did not result from an adjudication. The FCC issued it as part of a general rulemaking docket, without ever calling for public comments. So the only way that ordinary private citizens like the Molaks could conceivably have "participated" in the FCC proceeding would have been to file *unsolicited* comments on the general agency docket. Yet the Solicitor General's position in *NRC* is that the "mere submission of comments" is *not* sufficient to render someone a "party" for Hobbs Act purposes. *Id.* at 18. Given that tension—and how it would untenably leave agencies insulated from judicial review so long as they act through informal rulemakings—the Solicitor General *expressly acknowledged* in her *NRC* petition that "the prerequisites to party status in *rulemakings* are *not* at issue here." *Id.* at 19 n.2 (emphases added). It is therefore quite remarkable for the FCC to turn around and contend that reversal in *NRC* would be dispositive for this case.[1]

*Finally*, even assuming that the Supreme Court's eventual decision implies that the Molaks must file comments before the FCC to qualify as "parties" entitled to seek Hobbs Act judicial review, the Molaks have since done exactly that and thereby cured any deficiency. The FCC is currently considering the E-Rate Eligible Services List for

---

[1] Remarkable, but not surprising. This Court recently took notice of the FCC's gamesmanship in a different E-Rate case as part of the agency's continued attempts to evade review. *See Consumers' Rsch. v. FCC*, 109 F.4th 743, 756 n.5 (5th Cir. 2024) (en banc) ("FCC convinced the Supreme Court to deny certiorari in the Sixth and Eleventh Circuit cases in part by explaining the Court would have another chance to consider the constitutionality of the USF after this court's en banc ruling.… It would be unjust to allow FCC to raise an issue to evade en banc review so soon after it hid that issue to evade Supreme Court review.").

fiscal year 2025, and has proposed to add wireless services and equipment in line with the Declaratory Ruling under review. The Molaks therefore filed a comment on that docket—the same rulemaking docket through which the FCC issued the Declaratory Ruling—challenging the FCC's legal authority for that Ruling. *See* Letter, WC Docket No. 13-184, *available at* https://www.fcc.gov/ecfs/document/1008863927421/1. While they did so after filing the instant petition for review, the key point is that they have jumped through the hurdle that the agency says stands in front of judicial review. *Cf. Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (deeming exhaustion requirement satisfied where party took necessary step "albeit four years late"). And the Molaks' timing can hardly be faulted, given that Circuit precedent was (and remains) clear that *ultra vires* agency actions may be challenged without first making futile requests of the agency. As such, even if the Supreme Court's eventual decision in *NRC* implies that the Molaks must be "parties" to the agency "proceeding," they now qualify.

For all of these reasons, the prospect that *NRC* may impact this case is far too speculative and remote to warrant a lengthy delay of a ripe case for which the Court and parties have already prepared for argument. It makes far more sense to proceed with oral argument and address any potential implications of *NRC* down the road, via supplemental briefing (if this case remains pending) or further review (if not).

3. Abeyance would be especially improper here, because it would effectively hand the FCC a win—and impose irreparable harm on Petitioners and the public—by greenlighting the spending of tens of millions of dollars without statutory authority.

5

This is not a case seeking retrospective relief, where delay imposes no concrete harm. The Declaratory Ruling purports to authorize the FCC to spend tens of millions of dollars annually to subsidize wireless Internet service for students on school buses—even though the statute limits E-Rate to telecommunications services in *classrooms*. That money has started (or soon will start) to flow; once it does, there is no way to unring the bell. The financial harms to Petitioners and others who must foot the bill will be irreparable. *See, e.g.*, *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) (expenditures stemming from allegedly unlawful order qualify as irreparable harm "because federal agencies generally enjoy sovereign immunity for any monetary damages"). Even more significant, the public-interest harms associated with expanding unsupervised Intenet access to untold numbers of school-aged children—everything from increased cyberbullying to feeding social-media addiction—would obviously be irreparable too. Abeyance under these circumstances would thus amount to allowing the agency to flout the law with impunity while running out the clock.

Indeed, Petitioners have thus far refrained from seeking interim relief (*i.e.*, a stay of the Declaratory Ruling) only because this case was already ripe for resolution on the merits and oral argument had already been scheduled. In the event of a lengthy delay, however, a stay would be both necessary and warranted. *See Ohio v. EPA*, 144 S. Ct. 2040, 2052 (2024) (describing stay applications as "nothing new" and setting forth the standard applicable to stays of agency action). Petitioners are likely to succeed on the merits in light of the plain text of the Telecommunications Act, and especially after the

6

demise of *Chevron* deference. *See* Reply Br. 15–17 (explaining agency's heavy reliance on *Chevron* in standing up current E-Rate Program). And likelihood of success must naturally be judged under *current* law, so the prospect of *NRC* changing the procedural rules for Hobbs Act review would play no role in the analysis. Absent a stay, Petitioners and others would suffer irreparable harm, as explained above. And the public interest is disserved by allowing an agency to act unlawfully, no matter what one thinks of its ends. *See Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021) ("[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends.").

For this reason, holding the case in abeyance would not preserve the resources of the parties or the Court—it would simply replace adjudication of the *merits* with the need to adjudicate a *stay motion*. At this juncture, that would be backwards.

4. Conversely, no harm will be done by proceeding with oral argument in three weeks. Again, the merits briefing has been complete for months, and the Court has presumably already invested time in preparing for the argument. The panel is always free to decide to defer ruling until the *NRC* decision (although Petitioners would urge against that course). If *NRC* is decided while this case remains pending, the parties can file supplemental briefs on its implications, if any. And if this Court resolves the case in Petitioners' favor before *NRC* is resolved, and the FCC believes the latter calls for a different result, the agency can always seek rehearing or a GVR from the Supreme Court, which is what the Government routinely does when there is a potentially dispositive change in the law after a Court of Appeals has decided a case.

\* \* \*

The Court should not cancel a scheduled oral argument and freeze this litigation for the better part of a year on the mere (and dubious) supposition that the Supreme Court may end up resolving a different case in a way that might potentially have some bearing on this one. The Court should be especially reluctant to do so when the agency seeks in the interim to spend tens of millions of dollars in manifest disregard of statutory limits, thereby imposing irreparable harm on Petitioners and the public at large. At least for now, there is no barrier to the Court's adjudication of this case under current law—and that is exactly what this Court should do.

| | |
|---|---|
| Dated: October 14, 2024 | Respectfully submitted, |
| | *s/ Jacob Moshe Roth* <br> Jacob (Yaakov) M. Roth <br> yroth@jonesday.com <br> JONES DAY <br> 51 Louisiana Avenue, N.W. <br> Washington, D.C. 20001 <br> Telephone: (202) 879-3939 |
| | David K. Suska <br> dsuska@jonesday.com <br> JONES DAY <br> 150 W. Jefferson Ave. <br> Suite 2100 <br> Detroit, MI 48226 <br> Telephone: (313) 733-3939 |
| | **Counsel for Petitioners** |

# CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2024, the foregoing response was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. I certify that all parties required to be served have been served.

Dated: October 14, 2024         Respectfully submitted,

                                            s/ *Jacob Moshe Roth*
                                            *Counsel for Petitioners*

# **CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because it contains 2140 words, excluding exempted text.

2. This document complies with the type-face and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in proportionally spaced 14-point Garamond font using Microsoft Word 365.

*s/ Jacob Moshe Roth*
*Counsel for Petitioners*
