

# Federal Communications Commission
## Office of General Counsel—Litigation Division
45 L Street NE • Washington, DC 20554
Tel: (202) 418-1740 • Fax: (202) 418-2819

July 2, 2025

Lyle W. Cayce, Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

Re:   *Molak v. FCC & USA*, No. 23-60641 (argued Nov. 4, 2024)

Dear Mr. Cayce:

Respondents submit this letter brief in response to the Court's request for supplemental briefing addressing the impact on this case of the Supreme Court's decision in *Nuclear Regulatory Commission v. Texas*, No. 23-1300 (U.S. June 18, 2025).

Petitioners did not participate in the proceedings before the Commission. Thus, under *NRC v. Texas*, this Court lacks jurisdiction over the petition for review. *See* slip op. at 7 (holding that a party may seek judicial review under the Hobbs Act only if they "qualified as parties to the Commission proceeding"). Petitioners invoke a theory of nonstatutory "ultra vires" review, but in doing so they argue essentially that the *Order* under review exceeds the agency's statutory authority. Under *NRC v. Texas*, that theory of ultra vires review is insufficient. *See* slip op. at 14–16.

**1.**   In February 2021, the FCC's Wireline Competition Bureau sought public comment on several petitions to allow federal E-Rate funding to support remote learning, including Wi-Fi internet access on school buses. *See* Order ¶ 6 & nn.16–17. The Bureau received additional rounds of comments on E-Rate support for school bus Wi-Fi when it sought comment on proposed "Eligible Services Lists" in 2022 and 2023. *Id.* ¶ 6 & nn.20–21; *see* Public Notice, DA 22-878, 37 FCC Rcd. 9570, 9570 n.2 (WCB 2022) (advising that the Commission was considering E-Rate support for school bus Wi-Fi); Public Notice, DA 23-819, 38 FCC Rcd. 8297, 8297 n.2 (WCB 2023) (same). In September 2023, the agency released a public draft of the *Order* now under review, which would allow E-Rate funds to be used to support school bus Wi-Fi. *Public Draft Order*, FCCCIRC2310-02, https://perma.cc/R8FJ-VPGX (FCC Sept. 28, 2023). Following additional public feedback on the draft order, the Commission voted to adopt the final version of the *Order* in October

Lyle W. Cayce, Clerk of Court
July 2, 2025
Page 2 of 5

2023. *Modernizing the E-Rate Program for Schools & Libraries*, 38 FCC Rcd. 9943 (2023) (*Order*).

Petitioners did not participate in the underlying FCC proceedings. They instead filed the petition for review that initiated this lawsuit.[1]

**2.** *NRC v. Texas* holds that "[u]nder the Hobbs Act, only a 'party' aggrieved by the [agency] proceeding may seek judicial review," and that the use of the term "party," rather than "person," permits only those who were parties before the agency to seek review. Slip op. at 9. Except in more formal proceedings where the agency's rules require intervention or other special process, *cf.* 47 C.F.R. § 1.223, party status applies to those who "made a full presentation of views to the agency," such as by filing comments in the proceeding. *ACA Int'l v. FCC*, 885 F.3d 687, 711–12 (D.C. Cir. 2018) (quoting *Water Transp. Ass'n v. ICC*, 819 F.2d 1189, 1193 (D.C. Cir. 1987)).

Petitioners are not "parties" entitled to judicial review of the *Order* because they did not participate in the underlying FCC proceedings. Unlike other interested parties, *see* Certified Index of Items in the Record (Doc. No. 30), Petitioners did not file comments or make any other submissions during the Commission's consideration of E-Rate support for schools and libraries. Nor did they petition the agency for reconsideration of the *Order* even after it was released. *Cf.* 47 U.S.C. § 405(a)(1).

Petitioners have suggested that they might qualify as parties because they submitted a filing in a subsequent proceeding (concerning the proposed Eligible Services List for fiscal year 2025) in the same agency docket. *See* Opp. to Mot. to Hold Case in Abeyance at 4–5. (They submitted this comment after the FCC adopted the *Order*.)

---

[1] Respondents moved to dismiss the petition for review, arguing that Petitioners are not "part[ies]" entitled to challenge the *Order* under the Hobbs Act. *See* Doc. No. 33; 28 U.S.C. § 2344 ("Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies."); *id.* § 2342(1) (vesting the courts of appeals with exclusive jurisdiction to determine the validity of final FCC orders); *see also* 47 U.S.C. §402(a). A motions panel ordered that Respondents' motion to dismiss be carried with the case, and the motion remains pending.

If that argument is preserved, it fails. Even if that filing might have allowed Petitioners to challenge the FCC's final action in that later proceeding,[2] they are not parties with respect to the *Order* challenged here. *See Nat'l Ass'n of State Util. Consumer Advocs. v. FCC*, 457 F.3d 1238, 1247–48 (11th Cir. 2006) (*NASUCA*) ("Although the [successive orders] share the same docket number, the Hobbs Act confers party status [only] on those who participated in proceedings that led to the Order under review."). Petitioners identify no support for the argument that a non-party to an order can retroactively become a party by filing comments after the order has become final. And 28 U.S.C. § 2344 prescribes a 60-day window for any party to seek judicial review, but Petitioners were not parties eligible to seek review within that statutory window. If a nonparty wants to become a party that may seek judicial review under the Hobbs Act, they must file a petition for reconsideration. *See* Reply Br. 11 (recognizing this); *NASUCA*, 457 F.3d at 1247 ("A nonparty to [a] proceeding of the Commission must file a petition for reconsideration as a condition precedent to judicial review of the [o]rder.").

Because Petitioners sought review of the *Order* without having participated in the underlying agency proceedings—including without having petitioned the agency for reconsideration—they are not entitled to Hobbs Act review, as *NRC v. Texas* holds.

**3.** *NRC v. Texas* also confirms that nonstatutory ultra vires review, the principal theory on which Petitioners rely, is a "narrow" exception that "rarely succeeds." *See* slip op. at 14, 15. "Because ultra vires review could become an easy end-run around the limitations of the Hobbs Act," the Supreme Court "ha[s] strictly limited nonstatutory ultra vires review to the 'painstakingly delineated procedural boundaries of [*Leedom v.*] *Kyne.*'" *Id.* at 14. In that case, the Court allowed a nonstatutory action for equitable relief only where "the agency's order violated a 'specific prohibition' in" its organic act and thereby sought to exercise "'power that had been specifically withheld.'" *Ibid.* (quoting *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958)).

---

[2] The Wireline Competition Bureau issued an order in that proceeding in October 2024, *Modernizing the E-Rate Program for Schools & Libraries*, DA 24-1104, 2024 WL 4603415 (WCB 2024), and no party sought further review before the agency or in court.

Lyle W. Cayce, Clerk of Court
July 2, 2025
Page 4 of 5

In reversing a decision of this Court that applied ultra vires review more forgivingly (and on which Petitioners have heavily relied, *see* Reply Br. 5–7), *NRC v. Texas* explains that nonstatutory ultra vires review "applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute." Slip op. at 15 (emphasis by Court). Nonstatutory review is not permitted "simply because an agency has arguably reached 'a conclusion which does not comport with the law.'" *Id.* at 14–15 (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964)). Separately, *NRC v. Texas* instructs that "[u]ltra vires review is also unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review." *Id.* at 15 (quoting *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).

The same two independent reasons that the Court held to prevent ultra vires review in *NRC v. Texas* apply equally here.

"First," like the petitioners in *NRC v. Texas*, Petitioners here "basically dress up a typical statutory-authority argument as an ultra vires claim." Slip op. at 15. This is not a case where the FCC has contravened any "specific prohibition" in the Communications Act in order to exercise power that Congress expressly withheld. *Cf. id.* at 14–15. It instead involves a disagreement over the meaning of statutory language authorizing E-Rate support to "schools[] and libraries for educational purposes," 47 U.S.C. § 254(h)(1)(B), and over language directing the Commission to "enhance *** access" for "classrooms" to advanced internet services, *id.* § 254(b)(2)(A). These are ordinary issues of statutory interpretation that routinely arise in administrative agency cases. "Even if one were to disagree with" the Commission's legal analysis, that disagreement "falls well shy of a meritorious [ultra vires] claim." Slip op. at 15; *see* Resps.' Mot. to Dismiss at 15–16.

"Second, and alternatively, ultra vires review is not available because," like the petitioners in *NRC v. Texas*, Petitioners here "had an alternative path to judicial review": They could have first presented their views to the agency by filing comments and then, as a "party" to the relevant FCC proceedings, sought review of the resulting *Order* in accordance with the Hobbs Act. Slip op. at 16. Or if Petitioners were unable to participate in the agency's proceedings before the *Order* was adopted, they could have sought to become parties by filing a petition for reconsideration under 47 U.S.C. § 405(a)(1) and 47 C.F.R. § 1.106. They would then have been entitled to seek review of any adverse disposition of their petition.

\* \* \*

The FCC also takes this opportunity to notify the Court that, since the *Order* was adopted in October 2023, the composition of the Commission has materially changed. First, with the change in Administration, Commissioner Carr (who dissented from the *Order*) was named Chairman, and his predecessor departed. On June 6, 2025, two more Commissioners (one of whom voted to approve the *Order*) departed, and on June 23, 2025, Commissioner Olivia Trusty was sworn in. As a result, the FCC now has three sitting members, only one of whom (Commissioner Gomez) voted to approve the *Order*. The newly constituted Commission is reevaluating the agency's past actions, including the *Order* under review. The agency will update the Court with any further developments.

Respectfully submitted,

/s/ Robert J. Wiggers

Abigail A. Slater
   *Assistant Attorney General*

Robert B. Nicholson
Robert J. Wiggers
   *Attorneys*

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC 20530

/s/ Sarah E. Citrin

Bradley Craigmyle
   *Deputy General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

Scott M. Noveck
   *Counsel*

FEDERAL COMMUNICATIONS COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

cc: All counsel (via CM/ECF)