July 2, 2025

**VIA CM/ECF**
Lyle W. Cayce
Clerk of the Court
United States Court of Appeals
for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

      Re:    *Molak v. Federal Communications Commission*, No. 23-60641

Dear Mr. Cayce:

      This letter responds to the Court's June 18, 2025, order directing the parties to file letter briefs addressing the impact of the Supreme Court's decision in *Nuclear Regulatory Commission v. Texas*, No. 23-1300 (U.S. June 18, 2025) ("*NRC*") on this case. As explained below, *NRC* confirms that this case should be dismissed.

      Under the Hobbs Act, only a "party aggrieved by [a final agency] order may . . . file a petition to review the order in the court of appeals." 28 U.S.C. § 2344. Neither petitioner even attempts to claim that they meet that requirement. Instead, they argue that they are entitled to seek judicial review because their claims satisfy an exception to that requirement for *ultra vires* claims.

      They are wrong. *NRC* controls this case. As the Supreme Court held, the *ultra vires* exception has been "strictly limited" and applies only "when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *NRC*, slip op. at 14-15 (cleaned up). Petitioners argue that the Declaratory Ruling exceeds the FCC's statutory authority, but they have never identified a "specific prohibition" in the Communications Act that the FCC violated. That alone precludes *ultra vires* review. As a separate and independent matter, *NRC* also explained that *ultra vires* review is unavailable where a statute either (1) provides for meaningful and adequate opportunity for judicial review or (2) forecloses other forms of judicial review. The Hobbs Act does both.

      One aspect of this case remains unchanged by *NRC*: dismissal is separately warranted under Section 405(a) of the Communications Act. Section 405(a) provides that failure to file a petition for reconsideration of the FCC's decision bars judicial review (1) if the party seeking review was not a party to the agency proceedings that resulted in the challenged order, *or* (2) if the petition for review relies on questions of fact or law not presented to the FCC. 47 U.S.C. § 405(a). Petitioners could have participated before the FCC, and they could have filed a petition for reconsideration. They did neither. Instead, they seek to avoid the consequences of those choices by asking this Court to ignore the section's plain text and write the party requirement out of the statute. If the Court does not dismiss the petition based on the Hobbs Act, it should do so on this basis.

**I.      The Supreme Court's Decision in *NRC v. Texas* Confirms that This Case Should Be Dismissed.**

The Supreme Court's decision in *NRC* eliminates any doubt that the Hobbs Act mandates dismissal of this petition. Neither petitioner is a "party aggrieved" within the meaning of the Hobbs Act, which is a prerequisite for this court's jurisdiction. Nor, as explained below, is this the exceedingly rare circumstance where the *ultra vires* exception applies. Petitioners may not seek review of the FCC's decision, and the petition should be dismissed.

   *A.  Neither Petitioner Is a "Party Aggrieved" as Required Under the Hobbs Act.*

"Under the Hobbs Act, only an aggrieved 'party' may obtain judicial review" of an FCC decision. *NRC*, slip op. at 2. As the Supreme Court recognized in *NRC*, that limitation is jurisdictional. *See id.*, slip op. at 7 (noting that "the Hobbs Act limits *jurisdiction* to a 'party' aggrieved") (emphasis added); *id.* at 21 (Gorsuch, J., dissenting) ("[T]he Hobbs Act is a jurisdictional statute."). Participation in the proceeding, such as by "filing a comment" or other pleading before the agency's final decision, is required to "confer[] party status in an agency rulemaking." *NRC*, slip op. at 10.

Unlike the parties in *NRC*, Petitioners did not even try to participate in the proceedings until the FCC issued a final decision. It is undisputed that Petitioners never filed a comment, letter, or any other pleading before the FCC issued the Declaratory Ruling, even though the Commission sought comment beginning in 2021 on several petitions to allow E-Rate funding to support remote learning, including through equipping school buses with Wi-Fi. *See* FCC's Mot. to Dismiss at 7-8. That docket remained open after the initial comment period, and parties continued to meet with the FCC, file letters, and otherwise participate in the proceeding.[1] The FCC released a draft of the Declaratory Ruling in September 2023[2] and adopted the ruling in October of the same year.[3] At no point in this long process did Petitioners file comments or any other submission in relation to the ruling.[4] FCC's Mot. to Dismiss at 8-9. Many interested parties—but not Petitioners—submitted comments.[5]

---

[1]   *See, e.g.*, Letter from Indra Sehdev Chalk, T-Mobile USA, Inc., to Marlene H. Dortch, Sec'y, FCC, WC Docket No. 13-184 (filed May 31, 2023) (A185).

[2]   *Clarifying that the Use of Wi-Fi on School Buses is Eligible for E-Rate Funding*, FCC (Sept. 28, 2023), **Error! Main Document Only.**https://www.fcc.gov/document/clarifying-school-bus-wi-fi-eligibility-e-rate-funding.

[3]   *Modernizing the E-Rate Program for Schools and Libraries*, Declaratory Ruling, 38 FCC Rcd. 9943 (2023) ("Decl. Ruling") (A1).

[4]   As a result, Petitioners have a much weaker claim to party status than the entities in *NRC*. There, both entities filed comments in the agency proceeding. *See NRC*, slip op. at 6. Petitioners, by contrast, did not participate at any point in the agency proceedings despite ample opportunity to do so. *See* FCC's Mot. to Dismiss at 9 ("Petitioners did not file comments or make any other submission to inform the Commission's consideration of whether to adopt the Ruling, nor did they petition for agency reconsideration.").

[5]   While parties filing comments included businesses and groups like SHLB Coalition, they also

Petitioners have not argued that they are parties within the meaning of the Hobbs Act. Rather they argue that they can nonetheless seek review based on this Court's precedent recognizing an "*ultra vires* exception to the party-aggrieved status requirement." Pet'rs' Opp'n to Mot. to Dismiss at 10.[6] So, even if there were an argument that Petitioners meet the party-aggrieved requirement—and there is not—that argument has been forfeited. *See, e.g.*, *Guillot v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) ("Parties forfeit contentions by inadequately briefing them on appeal."). As Petitioners themselves put it, the *ultra vires* exception "is the ballgame here." Pet'rs' Opp'n to Mot. to Dismiss at 11.

B.  *NRC v. Texas* Forecloses Petitioners' Reliance on any Ultra Vires Exception.

*NRC* makes clear that Petitioners cannot rely on the *ultra vires* exception to avoid the Hobbs Act's jurisdictional requirements. As the Court explained, the exception "applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *NRC*, slip op. at 15 (cleaned up). A broader exception, the Court explained, would mean that "ultra vires review could become an easy end-run around the limitations of the Hobbs Act and other judicial review statutes." *NRC*, slip op. at 14. As the FCC explained in its motion-to-dismiss briefing, "Petitioners' claims do not fall into [the rule's] 'exceedingly narrow' scope." FCC's Mot. to Dismiss at 14-15 (citation omitted).

Tellingly, Petitioners never identify any "specific prohibition in a statute," that the FCC violated here. *See NRC*, slip op. at 15 (internal quotation marks omitted). Rather, as in *NRC*, Petitioners "dress up a typical statutory-authority argument as an ultra vires claim." *NRC*, slip op. at 15. Petitioners themselves contended that their "only argument is that the Declaratory Ruling exceeds the FCC's authority under the Communications Act." Pet'rs' Opp'n to Mot. to Dismiss at 11; *id.* at 9 (stating that Petitioners' claim is "precisely" "that the agency exceeded the scope of its statutory authority"). The Supreme Court was clear in *NRC*, however, that those types of arguments cannot support an *ultra vires* claim, absent identification of a "specific prohibition in a statute."[7] *NRC*, slip. op at 15 (internal quotation marks omitted). Because Petitioners did not follow the well-established, simple process to establish party status under the Hobbs Act, they "have no right to judicial review" in this proceeding. *NRC*, slip op. at 16.

---

included many individual members of the public. *See* Decl. Ruling, App. A (A26-27); *see also, e.g.*, Comments of Katherine Katzin, WC Docket No. 13-184 (filed Oct. 8, 2023); Comments of David M. Morrison, WC Docket No. 13-184 (filed Oct. 11, 2023).

[6]  Citations to filings in this case are to the page numbers stamped by the Court's filing system.

[7]  Petitioners argued before this Court that "the idea that the violation must be 'plain,' . . . conflates the *ultra vires* exception to the party-participation requirement of the Hobbs Act with an analytically distinct concept some courts have invoked to exercise 'equitable jurisdiction' to review agency action absent an express statutory cause of action." Pet'rs' Opp'n to Mot. to Dismiss at 12. On that basis, they argued that the cases the FCC cited, including *Leedom v. Kyne*, 358 U.S. 187 (1958), were "inapposite." *Id.* The Supreme Court, however, described *Leedom* as its "leading case on post-APA ultra vires review." *NRC*, slip op. at 14.

While that alone is sufficient to warrant dismissal, the Court also held that "[u]ltra vires review is . . . unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review, or if a statutory review scheme forecloses all other forms of judicial review." *NRC*, slip op. at 15 (citation omitted). Either would preclude *ultra vires* review. The Hobbs Act does both.

First, the Hobbs Act provides for meaningful and adequate opportunity for judicial review of "all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342. So, just as in *NRC*, Petitioners had an "alternative path to judicial review." *NRC*, slip op. at 15. Any party who participates in the agency's proceeding and who can otherwise establish Article III standing is "guaranteed judicial review" of a final order of the Commission. *See NRC*, slip op. at 15. Requiring parties to participate in the agency proceeding before seeking judicial review does not make the opportunity for review any less meaningful or adequate.

Second, and independently, the Hobbs Act expressly "forecloses all other forms of judicial review" in this procedural posture. *NRC*, slip op. at 15. It provides that the courts of appeals' jurisdiction to "enjoin, set aside, suspend . . . or to determine the validity of . . . all final orders of the [FCC] made reviewable by section 402(a) of title 47" is "exclusive." 28 U.S.C. § 2342; *see McLaughlin Chiropractic Assocs. v. McKesson Corp.*, No. 23-1226, 2025 U.S. LEXIS 2385, at *19 (June 20, 2025) ("[T]he courts of appeals have exclusive jurisdiction to hear pre-enforcement challenges."). Petitioners here appealed to this Court to "hold unlawful, vacate, enjoin, and set aside the Declaratory Ruling." Pet. for Review at 2. By its plain terms, the Hobbs Act is the sole means to seek such relief. *Ultra vires* review is therefore "unavailable." *See NRC*, slip. op at 15.

The Supreme Court reiterated in *NRC* that successful *ultra vires* claims will be few and far between. That is to be expected, given that such claims are "essentially a Hail Mary pass— and in court as in football, the attempt rarely succeeds." *NRC*, slip op. at 15. Petitioners' attempt "falls well shy" of the endzone, *id.*, and because that Hail Mary was "the ballgame here," Pet'rs' Opp'n to Mot. to Dismiss at 11, the Petition should be dismissed.

II. **Even If the Hobbs Act Did Not Mandate Dismissal, Section 405(a) of the Communications Act Does.**

While *NRC* makes clear that the Hobbs Act's party requirement mandates dismissal, it does nothing to alter the fact that Petitioners' claims separately should be dismissed pursuant to Section 405(a) of the Communications Act.[8]

Section 405(a) is clear: "The filing of a petition for reconsideration shall not be a condition precedent to judicial review . . . *except where* the party seeking such review (1) was not a party to the proceedings resulting in such order, decision, report, or action, *or* (2) relies on questions of fact or law upon which the Commission . . . has been afforded no opportunity to pass." 47 U.S.C. § 405(a) (emphasis added). In arguing that Section 405(a) does not preclude

---

[8] The FCC notified the Court after oral argument that it no longer advanced this position. *See* Suppl. Authority Letter, Dkt. No. 165 (filed Feb. 14, 2025). SHLB Coalition raises it here to ensure that the argument remains before the Court for consideration.

review, Petitioners ignore the first requirement and instead rely on a D.C. Circuit case that eliminated that prong based on an atextual theory of Congress's "purpose" in enacting Section 405(a). *Off. of Commc'n of United Church of Christ v. FCC*, 779 F.2d 702, 706-07 (D.C. Cir. 1985); *see* Pet'rs' Opp'n to Mot. to Dismiss at 13-14. As the Supreme Court and this Court have repeatedly recognized, however, "vague notions of a statute's basic purpose are nonetheless inadequate to overcome . . . text regarding the *specific* issue under consideration." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) (cleaned up); *Petteway v. Galveston Cty.*, 111 F.4th 596, 606 (5th Cir. 2024) (same).

Petitioners' argument that Section 405(a) is an exhaustion requirement, not a jurisdictional requirement, is beside the point. Even if Section 405(a) was not jurisdictional, statutory exhaustion requirements differ from judicially created ones, *see* FCC's Reply in Supp. of Mot. to Dismiss at 6, and "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 578 U.S. 632, 632 (2016). Where Congress has provided for no exceptions to an exhaustion requirement, courts may not rewrite the statute to create one. *See* FCC's Reply in Supp. of Mot. to Dismiss at 6-7. The plain text of Section 405(a) makes the "filing of a petition for reconsideration" under the Commission's rules a "condition precedent" to judicial review of Petitioners' claims. Petitioners failed to satisfy that precondition. The Petition for Review should therefore be dismissed.

\* \* \* \*

The Petition for Review should be dismissed.

Sincerely,

/s/ Jason Neal

| | |
|---|---|
| Andrew Jay Schwartzman<br>1341 G Street NW, 5th Floor<br>Washington, D.C. 20005<br>(202) 241-2408<br>AndySchwartzman@gmail.com | Jason Neal<br>Mohammad M. Ali<br>HWG LLP<br>1919 M St. NW, 8th Floor<br>Washington, D.C. 20036<br>(202) 730-1300<br>jneal@hwglaw.com<br>mali@hwglaw.com |
| cc: All counsel of record (via CM/ECF) | *Counsel for Schools, Health & Libraries Broadband Coalition* |

## CERTIFICATE OF SERVICE

I certify that on July 2, 2025, the foregoing document was filed via CM/ECF. Service was effected on all parties or their counsel of record via CM/ECF.

/s/ Jason Neal
Jason Neal